State vs. Fruge.

---

No. 14,130.

STATE OF LOUISIANA vs. JOSEPH FRUGE.

SYLLABUS.

1. Article 116 of the onstitution was not intended to abrogate or change the general rule of the common law, that, where an accusation of crime includes an offense of inferior degree, the jury may discharge the defendant of the higher crime and convict him of the less atrocious.

2. The charge of horse stealing, under R. S. 814, does not, of necessity, include the offense of "horse riding," etc., denounced by Act No. 30 of 1892. Nor, as a matter of fact, does the information upon which the defendant in this case was convicted of the one offense include a charge of the other.

3. In a criminal prosecution, it is not necessary for the court, of its own motion. or on request, to instruct as to the lower grades of crime involved, where there is no evidence on which to base such instruction. The giving of such instruction is not only unnecessary, but improper.

APPEAL from the Sixteenth Judicial District, Parish of St. Landry.—*Lewis, J.*

---

*Walter Guion,* Attorney General, and *R. Lee Garland,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*Ogden & Sandoz (John N. Ogden,* of Counsel), for Defendant, Appellant.

## STATEMENT.

The opinion of the court was delivered by

MONROE, J.　The defendant in this case appeals from a conviction and sentence of imprisonment at hard labor for "horse stealing," and brings his case before this court upon a bill of exceptions to the refusal of the trial judge to charge the jury "that, if they were not " satisfied with the evidence adduced being sufficient to convict under " the charge of horse stealing, that they, the jury, could find the " prisoner guilty of ' horse riding,' under Act No. 30 of 1892."

The information upon which the defendant was prosecuted charges that " he feloniously did steal, take and carry away, one horse," etc., a felony, punishable by imprisonment at hard labor for not less than one year nor more than five years. R. S. 814. The Act No. 30, of 1892, referred to in the bill, is an act entitled "An act to define and punish " the offense of riding, driving, or working, any horse, mule, ox, or " oxen, the property of another, without the consent of the owner." The text reads as follows, to-wit:

*"Be it enacted;* * * * That whoever shall, unlawfully, or " maliciously, take and ride, drive, or otherwise work, any horse, mule, " ox, or oxen, the property of another, without the consent of the " owner, shall be guilty of a misdemeanor, and, upon conviction, shall " be fined in a sum not exceeding fifty dollars, or imprisonment not " exceeding sixty days, or both, at the discretion of the court."

Article 116 of the Constitution reads, "The General Assembly shall " provide for the selection of competent and intelligent jurors. All " cases in which the punishment may not be at hard labor shall, until " otherwise provided by law, which shall not be prior to 1904, be tried by " the judge, without a jury. Cases in which the punishment may be at " hard labor shall be tried by a jury of five, all of whom must concur " to render a verdict; cases in which the punishment is, necessarily, at " hard labor, by a jury of twelve, nine of whom, concurring, may " render a verdict; cases in which the punishment may be capital, by a " jury of twelve, all of whom must concur to render a verdict."

The trial judge incorporates in the bill of exceptions relied on, the following reasons for refusing the charge requested, to-wit: "The " offense denounced by Act No. 30 of 1892 is triable by the court, and

"not by the jury. Constitution of 1898, Article 116. The offense, "therefore, is not included in the charge of horse stealing, that is to "say, the jury having no constitutional right to convict of the crime "denounced by Act 30, of 1892, the requested charge was properly "refused. The offense created by Act 30 of 1892 is not, necessarily, "included in the crime of horse stealing. A horse may be stolen and "never ridden."

It is not suggested in the bill of exceptions, nor does it otherwise appear, that there was any evidence offered upon the trial going to show that the defendant had ridden, driven, or otherwise worked, the horse which he is charged with having stolen.

## OPINION.

The first question presented is, whether the redistribution of juris-diction, as provided by the Constitution, was intended to operate a change in the general rule of the common law, that "Where an accu-"sation of crime includes an offense of an inferior degree, the jury "may discharge the defendant of the higher crime and convict of the "less atrocious." This rule was adopted in Louisiana nearly a century ago and is deeply embedded in the jurisprudence of the State, as well as in that of all other States of the Union and of all countries where criminal prosecutions are regulated by the common law, and we are not aware that it has, at any time, proved unsatisfactory, either here, or elsewhere. Upon the other hand, it is a fact, of which the court takes judicial cognizance, that, prior to the adoption of the present Constitution, without fault properly imputable to the prosecuting officers or the courts, there was much complaint in this State of the expense and delay in the matter of criminal prosecutions and trials. Grand juries were required by law to be composed of sixteen members, who, with the petit jurors, were entitled to their mileage, and *per diem,* and, from various causes, the different parishes through-out the State were subjected to great expense for the custody and maintenance of persons accused of crime and awaiting trial; and we entertain no doubt that it was that condition of affairs which led to the incorporation in the Constitution of the provisions now under consideration, the purpose of which, as we believe, is to remedy the evils complained of rather than to abrogate, or change, a long established rule, of which no complaint has ever been made. It will be observed that, by the article in question, the number of members

State vs. Fruge.

required to constitute a grand jury is reduced from sixteen to twelve, and that, viewed in the light in which we are considering the matter, the remaining provisions must necessarily result in expediting trials and facilitating final results in all cases not capital. If, however, the article be construed to mean that the tribunal before which the greater offense must be tried is incompetent, whilst discharging the accused, with respect to such offense, to convict him of an offense included therein, but inferior in degree, its main and, we think, sole purpose will be defeated and, instead of expediting the disposition and reducing the expense of criminal prosecutions and trials, the effect will be the reverse, since the trials will be multiplied and the expense increased in proportion to the multiplication and to the delays incident thereto.

Our predecessors, in declaring what they believed to be the duty of this court in the matter of the interpretation of statutes, have at different times used language to the following effect, to-wit : "In inter-"preting a statute, regard should be had to the mischief it was in-"tended to remedy." 1 H. D. 784, No. 7; Poree vs. Bonneval et als., 6 Ann. 389. "The real intention, when ascertained, will always pre-"vail over the literal sense of the terms. *Scire leges non hoc est* ."verba earum tenere, sed vim ac potestatem." State vs. Poydras, 9 Ann. 166. " A remedial statute must be so construed as to correct "the mischief at which it is aimed. Its policy, when evident, must "be respected and enforced." 1 H. D. 784, No. 9; Fox vs. Sloo, 10 Ann. 11; Fox vs. New Orleans, 12 Ann. 154.

A question similar to that which is here presented arose under the law establishing the late Superior Criminal Court for the Parish of · Orleans, and it was said by Ludeling, C. J.:

"The jurisdiction of the Superior Criminal Court, in which the "proceedings were had, is limited to offenses for which the penalty "may be death or imprisonment at hard labor in the penitentiary. "It is manifest that the court had jurisdiction to try the prisoner "under the charge preferred in the indictment, and this jurisdiction "could not be ousted by the verdict of the jury. Having had juris-"diction to try the case, the court necessarily had power to render the "judgment on the verdict found. And it would seem the verdict is "responsive to the indictment. In the indictment the accused is charged "with assaulting and inflicting a wound with intent to murder; by "the verdict he is convicted of assaulting and inflicting a wound.

" *without* the intent charged. In the greater offense the intent is to
" kill; in the smaller offense the intent to kill is wanting. The offense
" of which he is convicted is included in the one charged in the indict-
" ment." State vs. Delaney, 28 Ann. 434.

Following the rules of interpretation thus recognized and applied,
we are of opinion that the provisions of the Constitution which we are
here called upon to construe, in so far as they provide for the trial
of crimes, inferior in degree, in a manner different from that pro-
vided for the trial of the greater crimes, in which they are included,
must be held to apply only in cases where the parties accused are
prosecuted directly for the lesser crimes, and that those provisions
cannot be held to mean that where a person is prosecuted for a crime
which necessarily includes another, of an inferior degree, he may
not be convicted by the tribunal, before which he is prosecuted, of the
crime so included.

In considering whether a particular offense is included in an ac-
cusation of crime, within the meaning of the common law rule which
has been stated, this court has said: "The test is that the two offenses,
" the one charged in the indictment and the other contained in the
" verdict, must be of the same generic class, where the indictment for
" the greater contains the substantive allegations necessary to let in
" proof of the lesser; so that, if the proof fails to establish all the
" allegations of the indictment sufficiently to warrant a conviction
" for the offense therein described, but, at the same time, shows the
" accused guilty of a substantive offense, necessarily contained in the
" terms of the indictment, the jury may convict of the minor offense."
But in the case from which the foregoing excerpt is taken it was held
that, under an indictment for burglary, a verdict convicting the ac-
cused of larceny was invalid. State vs. Ford, 30 Ann. 313. And so,
in State vs. Disch, 34 Ann. 1134, it was held that a verdict of tres-
pass was not responsive to a charge of burglary. In the case at bar
the information upon which the defendant was convicted does not
contain the allegations necessary to charge the offense denounced by
the Act of 1892; nor is that offense, which consists of unlawfully or
maliciously riding or driving or otherwise working any horse, etc.,
the property of another, without the consent of the owner, necessarily,
included in the crime of horse stealing, of which the defendant was
convicted, since a horse may be stolen without being ridden, driven
or otherwise worked.

## III.

But, if it had been otherwise, and if the crime of "horse riding," etc., could be said to be included in that of "horse stealing," it does not appear from the bill of exceptions relied on that, as a matter of fact, there was any proof offered tending to establish the crime of "horse riding," etc., and hence, so far as the record shows, there was no reason why the trial judge should have given the charge requested. " On a criminal prosecution it is not necessary for the court, of its own " motion, or on request, to instruct as to the lower grades of crime " involved, where there is no evidence on which to base such instruc- " tion. The giving of such instruction is not only unnecessary, but " improper." Ency. Pl. & Pr., Vol. 11, p. 211.

There is no error to the prejudice of the appellant in the judgment appealed from, and it is accordingly affirmed.

Rehearing refused.