### STATE v. JONES

(130 S. E., 747)

1. HOMICIDE—DEFENDANT WHO HAS ADMITTED KILLING OR ASSAULT AND SET UP PLEA OF SELF DEFENSE ENTITLED TO INSTRUCTION ON LESSER DEGREE OF SAME OFFENSE, PROVIDING EVIDENCE TENDS TO SHOW OFFENSE OF LESSER GRADE.—Where defendant admits killing or assault to kill and sets up affirmative plea of self-defense, but fails in establishing that plea, he is entitled to have jury instructed upon lesser degree of same offense if there is any evidence in case tending to show that it was an offense of lesser grade.

2. HOMICIDE—ACTION OF COURT IN WITHDRAWING FROM JURY'S CONSIDERATION QUESTION OF SIMPLE ASSAULT AND BATTERY HELD PROPER.—In prosecution for assault and battery with intent to kill and murder, where accused attacked prosecutor with a knife and later shot him with a shotgun, *held*, that action of Court in withdrawing from jury's consideration question of simple assault and battery was proper.

3. ASSAULT AND BATTERY—"ASSAULT" DEFINED; "BATTERY" DEFINED.—
   An "assault" is an unlawful attempt, coupled with present ability,
   to commit a violent injury upon the person of another; and "bat-
   tery" is successful accomplishment of such attempt.

4. HOMICIDE—EVIDENCE TO CONVICT OF ASSAULT AND BATTERY WITH
   INTENT TO KILL AND MURDER MUST BE SUCH AS TO SHOW THAT
   ACCUSED WOULD HAVE BEEN GUILTY OF MURDER IF PARTY ASSAULTED
   HAD DIED.—Before conviction can be had for assault and battery
   with intent to kill and murder, jury must be satisfied beyond reason-
   able doubt from evidence that, if party assaulted had died as result
   of injury, accused would have been guilty of murder as defined
   in Cr. Code 1922, § 1, as killing of any person with malice afore-
   thought either express or implied.

5. ASSAULT AND BATTERY—"SIMPLE ASSAULT AND BATTERY" DEFINED.—
   "Simple assault and battery" is an unlawful act of violent injury
   to another, unaccompanied by any circumstances of aggravation.

6. ASSAULT AND BATTERY—"ASSAULT AND BATTERY OF A HIGH AND
   AGGRAVATED NATURE" DEFINED.—"Assault and battery of a high
   and aggravated nature" is an unlawful act of violent injury to
   person of another, accompanied by circumstances of aggravation,
   such as use of deadly weapon, great disparity between ages and
   physical conditions of the parties, or purposeful infliction of shame
   and disgrace.

7. HOMICIDE—INSTRUCTION THAT WOUNDING WITH DEADLY WEAPON
   WAS AN ASSAULT OF A HIGH AND AGGRAVATED NATURE HELD PRO-
   PER.—In posecution for assault and battery with intent to kill and
   murder, where accused had shot prosecutor with a shotgun, *held,*
   instruction that wounding with deadly weapon was an assault of
   a high and aggravated nature was proper.

8. CRIMINAL LAW—INSTRUCTION THAT ACCUSED SHOULD BE CONVICTED
   OF ASSAULT AND BATTERY WITH INTENT TO KILL AND MURDER IF
   ASSAULT WAS COMMITTED WITH INTENTION OF KILLING HELD PRO-
   PER, IN VIEW OF OTHER INSTRUCTIONS EXPLAINING KILLING WAS
   USED IN SENSE OF BEING ACCOMPANIED BY MALICE.—In prosecution
   for assault and battery with intent to kill and murder, instruction
   that, if assault was committed with intention of killing prosecutor,
   accused should be convicted of assault and battery with intent to
   kill and murder, unless excused upon some legal ground, *held* pro-
   per, in view of other instructions explaining that intent to kill
   was used in sense that it was accompanied by malice.

9. HOMICIDE—INSTRUCTION THAT TO SUSTAIN PLEA OF SELF-DEFENSE
   ACCUSED MUST SHOW THAT AT TIME INJURY WAS INFLICTED HE
   WAS IN APPREHENSION OF LOSS OF LIFE OR SERIOUS BODILY INJURY
   HELD PROPER.—In prosecution for assault and battery with intent
   to kill and murder, *held,* that instruction that, before accused could

sustain plea of self-defense, he must show that at time injury was inflicted he was in apprehension of loss of life or serious bodily injury, was proper.

Before MEMMINGER, J., Kershaw, December, 1924. Affirmed.

Bennie Jones was convicted of assault and battery with intent to kill and murder, and he appeals.

*Mr. Mendel L. Smith,* for appellant, cites: *Conviction of lesser offense than charged in indictment:* 98 S. C., 114; 126 S. E., 51. *Deadly weapons:* 121 S. E., 737. *Provocation and self-defense may co-exist:* 104 S. C., 250. *Cases distinguished:* 87 S. C., 532; 131 S. C., 94. *Assault and battery with intent to kill distinguished from assault and battery with intent to kill and murder:* Clark on Criminal Law (2nd Ed.), 231.

*Mr. A. F. Spigner, Solicitor,* for respondent.

November 10, 1925.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Indictment and conviction of assault and battery with intent to kill and murder. Sentence, five years' imprisonment. Defendant appeals.

The facts of the case, as stated by counsel for the defendant, admittedly in the light most favorable to the defendant, were these:

"That he was quietly going to his work of building a house just across the street from his home, when the prosecutor, who had concealed himself behind a pile of laths used in this building, arose and struck him with a trace chain, by no means a harmless weapon, cutting a gash in his head which had to be sewed up by a surgeon. After the infliction of this wound, the prosecutor struck the appellant again with the chain, knocking him to his knees. He arose and ran to his house, where a member of his family applied some crude domestic remedy to stop the flow

of blood from his wound. His clothes were exhibited in Court in support of his testimony showing blood stains. After remaining in his house about a half hour, he went across the street to the building taking his gun for his protection, if necessary. He did not see the prosecutor or know where he was when he left the house. As he was crossing the street, one of his children suddenly warned him of the approach of the prosecutor with the chain in his hand in a striking position. The appellant called him to stop and not come on him, but the prosecutor continued to advance, when he shot him once with his shotgun."

On the other hand, the version of the affair given by the witness for the State was as follows:

On the day before the shooting, the defendant had slapped the small son of the prosecutor. The matter was reported to the prosecutor, and he sought the defendant for an explanation. The interview was not entirely satisfactory to the prosecutor, who left with the injunction that such conduct must not be repeated: "The prosecutor then left and reported the matter to Policeman Cooley of the City of Camden, and did not see the defendant any more until about 6 o'clock the following morning, at which time he was riding his horse down Campbell Street, near the defendant's house, going to a restaurant, where his wife worked, to get his breakfast. He had unhitched his horse from the wagon where he was working and was riding him with harness on and had a trace chain in his hand. The defendant came across the street from his home, and they met alone in the street. The defendant came close to the horse upon which the prosecutor was riding, with his dinner bucket on his arm, and said to the prosecutor that he had whipped his damned boy and was going to cut hell out of him, and immediately cut at him with a knife. The prosecutor immediately jumped off his horse on the left side, and the defendant went quickly around the horse's head to cut him, when the prosecutor struck the defendant 'one lick

across the head with that trace chain.' The defendant then went into his house, which was about one-half acre away, and while standing on the front porch leaned in the door and got a double-barrel shotgun. When the prosecutor saw this, he dropped his bucket in the street and ran into the yard of Henry Anderson to get out of the way. Defendant came on down the sidewalk, with his gun in his hand, and just as the prosecutor was coming around the corner of Anderson's house, in the yard, the defendant shot him once with a gun from the rear, the shot hitting him in the side, arm, and hand. The back part of Anderson's house had high pillars, and the prosecutor could see the defendant, but the latter could not see him until he (defendant) got within about 30 or 40 feet of him. At the time he was shot, the prosecutor had no weapon, except the trace chain, in his hand. Henry Anderson told defendant not to shoot any more. The prosecutor stayed in the yard until Policeman Cooley arrived, and he then went to the office of Dr. Pickett, a colored physician, for treatment, having previously washed his hands in the house of Richard Haile, just above Anderson's. James McGirt, now dead, carried him to the doctor. As a result of his wounds, he could not work for about two months but can now work a little. He has been wearing a glove on his wounded hand since he was shot, and the fingers of this hand have not been working since. Besides the prosecutor, Hattie Anderson, Henry Anderson, Rectine Rice, and Dr. Pickett, colored, testified for the State." The prosecutor was wounded in the side, arm, and hand.

The exceptions raise four questions which will be considered in the order set forth below.

*The first question:* The appellant contends that the Circuit Judge committed reversible error in excluding from the consideration of the jury a possible finding that the defendant was guilty only of a simple assault and battery. The Court instructed the jury as follows:

"You have this defendant, Bennie Jones, indicted before you on an indictment charging him with assault and battery with intent to kill, which includes an assault and battery of a high and aggravated nature, and also includes simple assault and battery under the general definition, except that we cannot possibly have that in this case, for the reason that the injury inflicted and the weapon used are both of such a serious nature that if you find the defendant guilty at all, you cannot find him guilty of anything less than an assault and battery of a high and aggravated nature.

"Now, under these facts and circumstances, you take the record and write either 'guilty', which would mean guilty of an assault and battery with intent to kill, or guilty of assault and battery of a high and aggravated nature, or 'not guilty,' and let the foreman sign it with his name and 'foreman' under it and the date."

It is, therefore, plain that the Court positively instructed the jury, as a matter of law, that under no circumstances could the accused be convicted of a simple assault and battery. The question of alleged error is, therefore, squarely presented.

The first matter that attracts our attention is that the jury has convicted the defendant of assault and battery with intent to kill and murder, an offense which contains all the elements of murder except the death of the party assailed. It is difficult to perceive, then, how the defendant could possibly have been prejudiced by excluding from the consideration of the jury the question of simple assault and battery.

But waiving this consideration, the evidence shows without dispute that the prosecutor was shot with a double-barreled shotgun, as dangerous a weapon, within its range, as human ingenuity has devised, and was seriously wounded, incapacitating him from labor for two months and leaving him with a disabled hand, perhaps for life. The evidence for

the State makes out a case of assault and battery with intent to kill and murder; that of the defendant a case of self-defense.

There is no doubt as to the deadly character of the weapon used and the serious character of the wounds inflicted. The question is resolved into this: When the defendant has used a deadly weapon and inflicted serious physical injury upon the prosecutor, is he entitled, simply upon the ground that he has interposed the plea of self-defense, to have the issue of simple assault and battery submitted to the jury?

There is no doubt as to the general proposition thus announced in the case of *State v. Knox,* 98 S. C., 114; 82 S. E., 278:

"An indictment for a higher offense will sustain a conviction for a lower offense included in the higher, and that a jury can find a defendant guilty of an assault and battery [we interpolate, either aggravated or simple] under an indictment charging assault and battery with intent to kill [and murder]."

. But in the same case it is declared (a conclusion universally accepted) :

"It is not error, however, for a presiding Judge to refuse to submit the question of [simple?] assault and battery to the jury, under an indictment for assault and battery with intent to kill, unless there is testimony tending to show that the defendant is only guilty of assault and battery."

"To instruct the jury in a criminal case that the defendant cannot properly be convicted of a crime less than that charged, or to refuse to instruct them in respect to the lesser offenses that might, under some circumstances, be included in the one so charged—there being no evidence whatever upon which any verdict could be properly returned except one of guilty or one of not guilty of the particular offense charged—is not error." *Sparf v. U. S.,* 156 U. S., 51; 15 S. Ct., 273; 39 L. Ed., 343.

"It is unnecessary for the Court on its own motion or on request to instruct as to the lower grades of crime involved, when there is no evidence on which to base such instruction." *State v. Fruge,* 106 La., 694; 31 So.; 323.

In *State v. Kirkland,* 14 Rich., it is said:

"If there was no evidence in this case which, if believed, would have warranted the jury in mitigating the offense of the prisoners to the crime of manslaughter, then the charge of the presiding Judge is obnoxious to no just exception." *Carlton v. State,* 109 Ark., 516; 161 S. W., 145. *Gibson v. State,* 10 Ga. App., 117; 72 S. E., 944. *Wade v. State,* 11 Ga. App., 411; 75 S. E., 494. *State v. Sparks,* 79 Kan.; 548; 99 P., 1130. *Thompson v. State,* 85 Neb., 244; 122 N. W., 986. *Hardin v. State,* 51 Tex. Cr. R., 559; 103 S. W., 401. *State v. Kruger,* 60 Wash., 542; 111 P., 769. *State v. Copeland,* 66 Wash., 243; 119 P., 607. *State v. Colvin,* 226 Mo., 446; 126 S. W., 448. *State v. Mowry,* 37 Kan., 369; 15 P., 282. *State v. Wood,* 124 Mo., 412; 27 S. W., 1114. *Hodge v. State* (Tex. Cr. App.), 26 S. W., 69. *Jackson v. Com.* (Ky.), 14 S. W., 677. *Reeves v. State,* 17 Ala. App., 684; 88 So., 197. *State v. Willberg,* 45 Nev., 183; 200 P., 475. *State v. Shaffer,* 120 Wash., 345; 207 P., 229.

"While there are numerous cases which hold that, where the evidence is doubtful as to the grade of the assault, it is proper for the Court to instruct for simple assault and battery, and the jury may so find, it is also equally well settled in this State that where the evidence on behalf of the State, if true, establishes a felonious assault, the Court should not give an instruction for common assault." *State v. Niehaus,* 217 Mo., 332; 117 S. W., 73. *Fews v. State,* 1 Ga. App., 122; 58 S. E., 64.

In *State v. Ryno,* 68 Kan., 348; 74 P., 1114; 64 L. R. A., 303, the Court said:

"No error was committed by the Court in declining to give an instruction on assault. The act was committed with a deadly weapon, and, under the testimony, if the defendant

was guilty of any offense, it was one of a higher grade than mere assault."

In *Hickey v. U. S.,* 168 F., 536; 93 C. C. A., 616; 22 L. R. A. (N. S.), 728, the Court said:

"There is not the slightest doubt that he [the defendant] assaulted Powell with a revolver, using it as a club. Indeed, he admits it himself. That such an instrument, so used, is a dangerous weapon, no one will question. So that, the assault being established, there was but one defense; namely, that the defendant was justifiable in making it. If justifiable, he was not guilty; but, whether guilty or not guilty was a question for the jury. There was no room, therefore, for the jury to find the defendant guilty of a lesser offense than assault with a dangerous weapon, and the Court rightly refused to submit the question to them."

"When the evidence shows that defendant either is or is not guilty of the offense charged, it is not error to omit to charge as to the lower grades of crimes." *State v. Sherman,* 106 Iowa, 684; 77 N. W., 461. *State v. Atkins,* 122 Iowa, 996; 97 N. W., 996. *Strong v. State,* 63 Neb., 440; 88 N. W., 772.

In *Turner v. State* (Tex. Crim. App.), 72 S. W., 187, the Court said:

"The State's theory, which is supported by the testimony of witnesses, shows a clear case of assault [and battery] with intent to murder. Appellant's theory, supported alone by his own testimony, raises a clear case of self-defense. Nowhere in the record is the issue of aggravated or simple assault raised, as we view it. We accordingly hold that the Court did not err in failing to give a charge on aggravated or simple assault."

In *Barnes v. State* (Tex. Cr. App.), 45 S. W., 495, it is held (quoting syllabus):

"Where the alleged offense was either an assault with intent to murder or a case of self-defense, no charge on aggravated assault was required."

In *State v. Barton,* 142 Mo., 450; 44 S. W., 239, it is held (quoting syllabus):

"It is not error to fail to instruct on the lower grades of assault in a prosecution for assault with intent to kill, where the evidence for the State, if true, precludes any less offense than that charged, and the evidence of accused, if true, establishes a clear case of self-defense."

There is quite a difference in the application of the law to a case in which no other reasonable inference can be drawn than that it was one of downright assassination (or attempt to assassinate), and to a case in which the defendant, admitting the killing (or assault), sets up the affirmative plea of self-defense.

In the one case, as declared in the case of *State v. Durant,* 87 S. C., 532; 70 S. E., 306:

"For example, in a trial for murder, when the evidence shows beyond dispute an assassination, the law of self-defense and the law of manslaughter have no bearing on the issue, and there is no duty of the Judge to waste time in discrimination and definition pertinent to those subjects."

In the *Durant Case* death did not result from the attack and the same rule was applied upon a trial for assault and battery with intent to kill and murder, as the evidence was conclusive that if the person injured had died, it would have been a case of murder; consequently it was decided that the Circuit Judge committed no error in not charging the law of assault and battery of a high and aggravated nature or of simple assault and battery.

But in the other class of cases, where the defendant admits the killing or the assault, and sets up the affirmative plea of self-defense, he may fail in establishing that plea in one or more of the familiar essentials, and yet be entitled to have the jury instructed upon the law of manslaughter (in the case of a homicide), or upon the law of assault and battery of a high and aggravated nature and of simple assault (in a case where death

did not result), provided that there is any evidence in the case tending to show that it was an offense of a lesser grade than that charged; upon the principle that notwithstanding his failure to establish his plea, the burden is still upon the State to establish his guilt of the higher offense beyond a reasonable doubt.

The position taken by counsel for the appellant is best explained in his own language:

"The right of self-defense is a right to repel force with force and to use as much force as is reasonably necessary to prevent the impending or threatening injury. There is no injury at all in legal contemplation, it matters not what may be the character of the weapon used, or the extent of the injury actually inflicted, just as long as the force used does not exceed that degree which the accused is entitled to use. It is, therefore, plain that just as the excessive force applied may be so great (the character of the weapon and the manner of its use being only circumstances in evidence to establish the fact) as to indicate a malicious intent to inflict the injury, or of such a nature as to reduce the act to the next lower grade, so, in reason and principle, it may be so slight in the degree of its unlawfulnesss, under all the surrounding circumstances, as to make the act in legal contemplation simple assault and battery."

This argument is ingenious but specious. Once concede that the defendant, in repelling the attack of his assailant, has used more force than was reasonably necessary, his plea of self-defense, which up to the moment of his repelling attack was perfect, immediately falls to the ground, and he is held in law as the aggressor from the begining of his attack; the degree of his responsibility must be determined, therefore, by the character of his attack, the nature of the weapon used, and the extent of the injury inicted, just as if there had been no previous attack upon him. Circumstances may have existed which would repel the conclusion that he had used excessive force, though ap-

parently he had; thus where there was great disparity in the ages of the parties or in their physical conditions, the older or weaker. may be justified in using a deadly weapon to repel a violent attack by the other, although the assailant may be unarmed. But this consideration is available only for the purpose of preventing the defendant's otherwise perfect self-defense from being destroyed.

In *State v. Wood,* 1 Bay (S. C.), 351, quotaing syllabus, it is held:

"Every assault will not justify an enormous battery; but every such beating must be in one's own defense, and proportioned to the nature of the injury offered; otherwise the defendant himself becomes the aggressor."

See, also, *Golden v. State,* 1 S. C., 292.

"A person defending himself from an attack becomes liable as an aggressor, when the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally." 2 R. C. L., 552.

If then the defendant, under the hypothesis of counsel, used more force than was necessary, it matters not how slight was that excess, he at once became the aggressor and must be judged by his conduct. That conduct in the case at bar is shown to have been the use of a deadly weapon, resulting in a most serious physical injury. How that can be construed into simple assault and battery, or as furnishing facts upon which such a verdict could possibly have been arrived at, is inconceivable. The Circuit Judge was entirely right, therefore, in withdrawing from the consideration of the jury the question of simple assault and battery.

Counsel for appellant strongly relies upon the case of *State v. Knox,* 98 S. C., 114; 82 S. E., 278, and attempts to sustain that decision upon an elaborate theory. The ruling of the Court was that the defendant was entitled to have the issue of simple assault and battery submitted to the

jury upon the ground that "there was testimony from which the jury might have drawn a reasonable inference, that the defendant was only guilty of assault and battery." What that testimony was does not appear in the opinion of the Court. From the admitted facts that are set forth, speaking for himself alone, the writer cannot conceive how a defendant who brought on the difficulty by opprobrious epithets, engaged in a tussel with the prosecutor with an open knife in his hand, and carved him up during the scuffle, after utterly failing in his plea of self-defense, can hope to have his outrageous conduct mitigated to a simple assault and battery.

*The second question:* The appellant contends that the Circuit Judge committed reversible error in charging the jury that if the assault was committed with a dangerous weapon, or if serious bodily injury resulted therefrom, the defendant should be convicted of assault and battery of a high and aggravated nature, unless excused upon some legal ground.

An "assault" is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another. A "battery" is the successful accomplishment of such attempt. While there is no statutory definition of the offense of "assault and battery" in this State, common usuage for convenience has divided the offense into three degrees: (1) Assault and battery with intent to kill and murder; (2) assault and battery of a high and aggravated nature; (3) simple assault and battery. The division is intended more for the purpose of imposing sentence than of establishing distinct crimes or degrees of a crime. For the sake of brevity these divisions will be referred to as of the first, second, and third degrees.

The first degree contains all of the elements of murder except the actual death of the person assaulted; so that before the accused can be convicted of this charge, the jury must be satisfied beyond a reason-

able doubt, from the evidence, that if the party assaulted had died as a result of the injury, the defendant would have been guilty of "murder", which is defined in Section 1 of the Criminal Code, as "the killing of any person with malice aforethought, either express or implied." It is apparent that there must be, not simply the intent to kill, for that may be present in a case of manslaughter, but the intent to kill accompanied with malice, the distinguishing element between murder and manslaughter.

It has been a common practice for Circuit Judges, in their charges to juries, to assimilate the law in cases of first degree assault and battery to the law applicable to murder (which is entirely right), and to assimilate the law in cases of second degree assault and battery, to the law applicable to manslaughter (which also is entirely right, when confined to cases in which the evidence does not warrant the submission of the question of simple assault and battery to the jury). The defendant may be convicted of manslaughter when the death has resulted from a simple assault and battery. To charge the jury that if under the circumstances of the case, had death ensued as a result of the defendant's attack, the defendant would have been guilty of manslaughter, death not having ensued he would be guilty of second degree assault and battery, is necessarily to exclude from the consideration of the jury the question whether he should be found guilty only of simple assault and battery.

The statutes have not defined any of the so-called degrees of assault and battery. In view of the plain duty of the presiding Judge to give the jury a fair conception of the legal elements of the crime with which the defendant is charged, we venture to suggest the following explanation of the several so-called degrees of assault and battery:

"Simple assault and battery," as the term implies, is an unlawful act of violent injury to the person of another, unaccompanied by any circumstances of aggravation.

"Assault and battery of a high and aggravated nature" is an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation, such as the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, the great disparity between the ages and physical conditions of the parties, a difference in sexes, indecent liberties, or familiarities with a female, the purposeful infliction of shame and disgrace, resistance of lawful authority, and others.

"Assault and battery with intent to kill and murder" has been sufficiently covered above.

The charge of the Circuit Judge in this case that wounding with a deadly weapon was an assault of a high and aggravated nature is sustained by the authorities, particularly *State v. McKettrick,* 14 S. C., 346. In *State v. Beadon,* 17 S. C., 55, it was held that an assault with a shovel was one of aggravated nature; so in *State v. Smalls,* 17 S. C., 63, with a barrel stave; and in *State v. Burch,* 43 S. C., 3; 20 S. E., 758, with a pistol.

*The third question:* The appellant contends that the Circuit Judge committed reversible error in charging the jury that if the assault and battery was committed with the intention of killing the prosecutor, the defendant should be convicted of assault and battery with intent to kill and murder as charged in the indictment, unless excused upon some legal ground.

Strictly speaking, the error is well assigned. The intention to kill, as has been stated, may be present in cases of manslaughter as well as of murder. The disposition of the assailed to do harm to his assailant, aroused by the sudden heat of (not and) passion, may reach the point of an intention to kill, without affecting the guilt of the assailed of the lesser crime of manslaughter; when the intention to kill is accompanied by malice the offense is murder. The context of the Judge's charge, however, clearly

shows that he used the expression "intention to kill" in the sense of an intention accompanied by malice. He charged the jury:

"You take all the facts and circumstances and say whether or not the shooting, if it had resulted in death, would have been murder, if it was done with malice aforethought, either express or implied; if so, that would be the intention of killing, even though death did not occur, the charge of assault and battery would be made out entirely"—thus explaining the sense in which he used the expression.

Practically the precise point arose in the case of *State v. Milam*, 88 S. C., 127; 70 S. E., 447. There the indictment charged assault and battery with intent to kill and murder. The Circuit Judge stated to the jury that the charge was assault and battery with intent to kill. The appellant contended that the impression was thus created that the defendant was charged with an offense less serious than that contained in the indictment, and that, in consequence, the jury may have convicted him of the greater offense, upon proof of his guilt only of the lesser. The Court said:

"There can be no doubt that assault and battery with intent to kill and murder is a more serious offense than assault and battery with intent to kill, because in the former, if death ensues, the perpetrator is guilty of murder, while in the latter, he may be guilty of manslaughter only, since it may be done in sudden heat and (of?) passion upon sufficient legal provocation."

The Court, however, held that in view of the context of the charge in which the Circuit Judge stressed the essential ingredient of malice in the offense of assault and battery with intent to kill and murder, the sense in which he used the expression was clearly the greater offense.

*The fourth question:* The appellant contends that the Circuit Judge committed reversible error in charging the jury that before the defendant could sustain his plea of self-defense he had to show that at the time the injury was

inflicted he was in apprehension of the loss of his life or of serious bodily injury, upon the ground that such an instruction is applicable only to the plea of self-defense in the case of a homicide committed.

Whatever may be said of the correctness of the appellant's position under a charge of assault and battery of either the second or third degree, it is unquestionably the law that under a charge of assault and battery of the first degree, so closely assimilated as it is to the charge of murder, every element of self-defense necessary to be established in a case of homicide must be established in a case of assault and battery with intent to kill and murder; and while it may have been proper to instruct the jury that the rule should be modified in the event that they concluded that there was no intent to kill and murder established, it certainly cannot be said that the element referred to was essential only in cases of homicide.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

Mr. Chief Justice Gary and Messrs. Justices Watts and Marion, and Mr. Acting Associate Justice R. O. Purdy concur.