14722

STATE v. JOHNSON

(198 S. E., 1)

*Mr. W. O. Godwin,* for appellant,

*Mr. G. Lloyd Ford, Solicitor,* for the State,

July 14, 1938.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The defendant was tried under an indictment charging him with assault and battery with intent to kill and murder one Vardelle Hucks. He was convicted of assault and battery of a high and aggravated nature and sentenced to imprisonment for eight months or to pay a fine of $300-.00.

At the close of his instructions to the jury, Judge Rice was requested by counsel for the defendant to "charge simple assault and battery." He refused, however, to do so; and whether he was right or wrong in this, is the main question presented for decision. Later, before the time for perfecting the appeal taken had elapsed, the defendant was allowed by the Court to move for a new trial on after-discovered evidence. The motion was heard by Judge Mann, and his refusal to grant it is also made the basis of an exception. The two questions raised will be considered in the order above indicated.

First. In *State v. Jones,* 133 S. C., 167, 130 S. E., 747, the Court, speaking through Mr. Justice Cothran, said (page 751):

"An 'assault' is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another. A 'battery' is the successful accomplishment of such attempt. While there is no statutory definition of the offense of 'assault and battery' in this state, common usage for convenience has divided the offense into three degrees: (1) Assault and battery with intent to kill and murder; (2) Assault and battery of a high and aggravated nature; (3) Simple assault and battery. The division is intended more for the purpose of imposing sentence than of establishing distinct crimes or degrees of a crime. For the sake of brevity these divisions will be referred to as of the first, second, and third degrees.

"The first degree contains all of the elements of murder except the actual death of the person assaulted; so that before the accused can be convicted of this charge, the jury must be satisfied beyond a reasonable doubt, from the evidence, that if the party assaulted had died as a result of the injury, the defendant would have been guilty of 'murder,' which is defined in Section 1 of the Criminal Code, as 'the killing of any person with malice aforethought, either express or implied.' It is apparent that there must be, not simply the intent to kill, for that may be present in a case of manslaughter, but the intent to kill accompanied with malice, the distinguishing element between murder and manslaughter."

The Court then defined as follows the other "degrees" of the offense, pointing out that what we have quoted just above with reference to the first degree was sufficient:

" 'Simple assault and battery,' as the term implies, is an unlawful act of violent injury to the person of another, unaccompanied by any circumstances of aggravation.

" 'Assault and battery of a high and aggravated nature' is an unlawful act of violent injury to the person of an-

other, accompanied by circumstances of aggravation, such as the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, the great disparity between the ages and physical conditions of the parties, a difference in the sexes, indecent liberties or familiarites with a female, the purposeful infliction of shame and disgrace, resistance of lawful authority, and others."

And as to the use of a deadly weapon:

"The charge of the circuit Judge in this case that wounding with a deadly weapon was an assault of a high and aggravated nature is sustained by the authorities, particularly *State v. McKettrick*, 14 S. C., 346. In *State v. Beadon*, 17 S. C., 55, it was held that an assault with a shovel was one of aggravated nature; so in *State v. Small*, 17 S. C. (62), 63, with a barrel stave; and in *State v. Burch*, 43 S. C., 3, 20 S. E., 758, with a pistol." To the same effect is *State v. Dalby*, 86 S. C., 367, 68 S. E., 633.

In *State v. Knox*, 98 S. C., 114, 82 S. E., 278, after stating the rule that (page 279) "an indictment for a higher offense will sustain a conviction for a lower offense included in the higher," the Court declared—a conclusion of general acceptance—that it is not error for a presiding Judge "to refuse to submit the question of (simple?) assault and battery to the jury, under an indictment for assault and battery with intent to kill, unless there is testimony tending to show that the defendant is only guilty of assault and battery." See, also, *State v. DuRant*, 87 S. C., 532, 70 S. E., 306, where it was held (page 307) that the "purpose of a charge is to enlighten the jury," and that "this purpose is accomplished by a statement of the law which fits the concrete case."

With the above-stated principles of law in mind, we turn to an examination of the testimony contained in the record before us. Vardelle Hucks, the prosecuting witness, testified that she started to work a crop with the defendant in 1937 on shares; that he furnished her a piece

of land for corn that was not good, and that she planted a small piece which a neighbor gave her; that when the defendant learned of this, he told her that she "couldn't sharecrop with the other man and him, too," and refused several times "to let me have the mule to plow with." She further stated that on or about May 31, 1937, she and a man named Ben Hucks were hoeing in a tobacco patch, a small one which she was working on shares for the defendant, and that "him and his wife come out with their hoes and he walked up and broke my hoe out of the handle in two separate pieces. Then he hit me on the head with his hoe, and I hit him with the piece of the handle I had in my hand. Then he knocked me down when he struck me on the arm and struck me on the leg and cut a gash in my leg, and his wife come to beat me with her hoe, and I grabbed it and he come back and beat my fingers to pieces on her hoe handle." She also said that she had done nothing to cause him to hit her with the hoe. In fact, that she had said nothing to him and he nothing to her, and that he struck her, without any reason for doing so, on the side of the head with the eye part of the hoe, then chopped her on the arm and knocked her down; and that he chopped her on the leg when she was down.

Ben Hucks testified as follows: "Me and this girl was in the field hoeing tobacco and was about out to the end rows, and I happened to look up and him and his wife was coming towards us with their hoes on their shoulders, and he come up and spoke to me and said 'good morning, Ben'. He said 'I thought I told you about that corn'. At that time he struck this girl's hoe and broke it out of the handle. When he broke it out of the handle he knocked her down with the hoe and when he knocked her down he run at me with the hoe and I run." He also stated that the defendant hit the prosecuting witness on the side of the head, on the arm and leg and "her fingers was beat"; that she lay there "squalling and hollering"; and that he saw her right afterwards, and "she was bleeding

and cut up." Hucks denied having hit the defendant in the stomach with a hoe, or that he had hit him at all; but said that when Johnson knocked the woman down, the witness ran away.

Daniel Williamson stated that he was about 298 steps from where the difficulty took place; "I didn't see them when they first met up that morning, but pretty soon after they did get up I saw him come overhanded with his hoe and she fell. Then he turned and took after Ben Hucks with his hoe, and his wife went on Vardelle Hucks, and she must have got hold of her hoe handle and they were down around there, and Ben run to the road and hollered for me to help get them off Vardelle, but I didn't go." He also said that there was nothing to cut off the view from where he was standing, and that he could easly see the place where the difficulty was; and that he heard licks, though it might have been one hoe handle striking against the other. He stated that Vardelle came up the road and stopped and showed him the bruises on her head; that her sleeve was cut into and a gash cut in the meat; and that there were bruises on her arm, leg and fingers.

Willie Barnhill testified that he was plowing down a little grade, and when he heard the "hollering" he ran up there and saw what was going on. He said: "I seen Ben Hucks running from Mr. Johnson there and the woman was down. I could hear her hollering and it looked like his wife was over her, and then he turns back and goes back to his wife and that woman, and looked like he took her and tried to sling her loose from the hoe, and she was big and heavy and he couldn't break her. I could see the licks where she was on the ground, and he was beating her. Looked like he was trying to beat her over the head. She had more grip on it than his wife did."

H. E. Blanton, magistrate in that community, stated that he saw Vardelle, the prosecuting witness, that same day, and that he issued a warrent for Johnson; that she

had a crippled hand and a mark across her arm, and it "seems like there were some other bruises, but I don't recall."

The defendant testified in his own behalf. His testimony as to what happened leading up to the difficulty was substantially the same as that of the prosecuting witness. His version of what happened in the tobacco field on the morning in question, however, was a complete denial of what the witnesses for the State testified. Speaking of Vardelle and Ben Hucks, the witness said: "When they went in the field hoeing, my wife got breakfast and me and her walked on down by the end of the rows. The rows run right near the end of the patch where we would go to the tobacco patch. I walked up and said 'Good morning.' Ben said, 'Good morning.' Vardelle never said anything. I said 'Ben, didn't I tell you and Vardelle you were not going to crop with me and Barnhill both?' He said 'Yes', and when he did Vardelle hit me over the head with the hoe. I struck at her with my hoe and knocked the hoe out of her hand and broke it to pieces Ben struck me in the stomach and dashed to run. She turned around and caught hold of my wife's hoe and tried to jerk it out of my wife's hand, and she didn't turn my wife's hoe loose. My wife said 'Make her turn my hoe loose.' I never hit her; I caught hold of the blade of the hoe and pulled it out of her hands. She went on off and her and Ben, and she went on and lawed me." Johnson further testified that he "never hit the woman a lick—never done a thing but take the hoe out of her hands." He stated that he "never touched her", but that she just lay down on the ground, and that "if I was to hit her with a hoe, I could have killed her with a hoe." He said that he did not know how she received any scratches or bruises that she may have had, as the witness never touched her.

Sam Hardwick, a witness for the defense, testified that he saw Vardelle Hucks the day of the trouble; that she borrower two or three dollars from him, and he saw her

fingers were bleeding and asked her what the trouble was, and she told him that "Ed's beat me." The witness could not recall seeing any broken skin or blood on any other part of her body at the time but he had seen the bruises on her at the last term of the Court and that the one on her arm was then in bad shape. Harry Martin, also a witness for the defense, stated that he saw the prosecuting witness the day after the difficulty, and that she had a scar in the arm and her "fingers was beat up."

Counsel for the appellant states in his argument that if "the presiding Judge had only had before him the testimony of the two main witnesses for the prosecution, to wit: The prosecutrix and Ben Hucks, he would not have committed an error in failing and refusing to charge the jury the law with reference to simple assault and battery, but in view of the (contradictory) testimony of the defendant," the Court was bound to charge as requested.

We are not in accord with the view expressed as to the effect of the defendant's testimony. We think that the facts of this case clearly bring it within the principles announced in *State v. Jones, supra,* and authorities cited therein. The State, under the testimony adduced by it, undoubtedly made out a case, in the absence of malice shown, of assault and battery of a high and aggravated nature. The weapon claimed to have been used by the defendant was a deadly one, so much being admitted by counsel for the appellant. The wounds inflicted, even if not serious, were evidently extremely painful, as the prosecuting witness, according to the State's testimony, was struck with the hoe upon her head, was then knocked down, her arm and leg being gashed and her fingers lacerated. In addition to this, the assault and battery was made by a man upon a woman. As to the testimony of the defendant, he denied that he was guilty of the charge made against him, or of any charge, testifying that he never hit the woman a lick and never touched her. In this situation, the ques-

tion for the jury was whether the defendant, under the testimony for the State, was guilty of assault and battery with intent to kill and murder, or one of a high and aggravated nature, about which the Court correctly and fully charged them; or whether he was entitled to an acquittal under his positive testimony denying that he hit or struck the woman at all. We find no evidence in the record tending to show that the defendant was only guilty of simple assault and battery. In fact, the testimony is to the contrary. The trial Judge, therefore, properly refused to instruct the jury as requested.

Second. The "after-discovered evidence" on which the defendant asked for a new trial was testimony purported to have been given by Vardelle Hucks and by Ben Hucks before a magistrate in a civil action arising out of the same alleged facts testified to by these witnesses in the case at bar. The contention is that there was a material variance in the testimony given by them in the two cases.

The Court finds no merit in this assignment of error. We have examined the record with care, and it appears that the point made by the appellant with reference to the testimony of Vardelle Hucks with regard to the cause of the difficulty, even if it were entirely sustained, is not material. She did testify fully before the magistrate with reference to the material facts that she was knocked down by the defendant with a hoe, and that the wounds inflicted upon her were extremely painful, if not serious. As to Ben Hucks, the contention is that it might be inferred from his testimony in the civil action that Vardelle fell down rather than she was knocked down by the defendant as testified to by Hucks in the criminal case. While it is true that this witness, in testifying in the two cases, did not use the same form of expression to describe what happened in the tobacco patch, where it is claimed the assault and battery was committed, there was no such

material difference in what he did say as would warrant the granting of a new trial. Furthermore, a motion of this kind is addressed to the sound discretion of the Judge hearing it, and his refusal to grant it will not be interfered with by this Court, unless an abuse of discretion is shown, amounting to manifest error of law. This the appellant has failed to show.

The judgment of the Circuit Court is affirmed.

MRSSRS. JUSTICES BONHAM, BAKER, and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON, concur.

MR. JUSTICE CARTER did not participate on account of illness.