## Case No. 15,636.

UNITED STATES v. LOWRY et al.

[2 Wash. C. C 109; 1 Am. Law J. 232.] [1]

Circuit Court, D. Pennsylvania. April Term, 1808.

WRIT OF POSSESSION—OBSTRUCTING PROCESS—
THREAT TO RESIST.

1. In the execution of a writ of habere facias possessionem. if adverse possession be held, the officer is first to turn out the occupant, and take possession in the name of the law; and, afterwards, deliver it to the plaintiff in ejectment. It is not necessary that the vacant possession shall be immediately delivered to the plaintiff.

2. The offence of obstructing process, consists in refusing to give up possession, or in opposing or obstructing the execution of the writ, by threats of violence, which it is in the power of the person to enforce; and thus preventing the officer from dispossessing the person so acting.

[Cited in U. S. v. Huff, 13 Fed. 640.]

3. A mere threat to resist the execution of the writ, is not an offence under the act of congress; but if, when the officer proceeds with the writ to the land, and is about to execute his process, a threat is used, by a person forcibly retaining the possession, accompanied by the exercise of force, or having the capacity to employ it, and the officer does not do his duty; the offence is complete.

[Cited in U. S. v. Huff, 13 Fed. 640.]

4. The officer is not obliged to risk or expose his person, or to proceed to a personal conflict with the defendant.

[Cited in U. S. v. Huff, 13 Fed. 640.]

These cases were tried by separate juries. The defendants [Morrow Lowry and John Lowry] were indicted, severally, for obstructing the marshal in executing writs of habere facias possessionem, issued from this court. It appeared in evidence, that the writs of habere facias possessionem, issued regularly in each case, on judgments in ejectment recovered in this court, were delivered to a

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq. 1 Am. Law J. 232, contains only a partial report.]

deputy marshal; whose commission from the marshal was called for and produced, with a certificate of his having taken the oath required by the act of congress, before a state judge, and duly certified to the district judge: that each defendant, when the marshal went with the writs' to execute them, closed his door. was armed, and threatened to kill the officer, if he attempted to dispossess them; declaring, that they would lose their lives, rather than permit the execution of the writs.' In consequence of this opposition, he was prevented from executing the writs.

Mr. Rawle, for defendant, in the first case, contended that the marshal was not in the capacity to execute the writ; since it appeared in evidence, that neither the plaintiff in the ejectment, or any person representing him, was with the marshal to receive the possession.

Mr. Levy, for defendant, in the second case, insisted that nothing was proved against his claims but a menace, which is not punishable by the act of congress.

WASHINGTON, Circuit Justice (charging jury). In the execution of a writ of habere facias possessionem, there are several acts to be performed, which may all be done within a short space of time; but must necessarily be done in succession. If an adverse possession be held, the officer is first to turn out the occupant, then to take possession in the name of the law, and afterwards to deliver it to the plaintiff in ejectment. The offence, which consists in opposing or obstructing the execution of the writ, is complete, when the person in possession refuses, and by threats of violence, which it is in his power to enforce, prevents the officer from dispossessing him. It is nothing to the person, thus obstructing the execution of the process at the threshold, how far it is in his power immediately to deliver the vacant possession to the plaintiff, in the writ. If, then, the jury are satisfied that such obstruction took place in this case, they must find for the plaintiff.

In the second case, THE COURT said: It is said, that a mere threat to resist the execution of a writ, is not an offence against the act of congress. This is true; but if, when the officer having the writ, proceeds to the land, and is about to execute it, such a threat is made by a person retaining the possession, accompanied by the exercise of force, or having the capacity to exercise it, in consequence of which the officer cannot do his duty; it cannot be seriously contended, that the execution of the process has not been opposed or obstructed; and this is the offence charged, which you are to decide upon. The officer is not obliged to risk his life. or expose himself to personal violence; it is enough that he is prevented, by the exercise of force, or the threat of force, by one in a condition to execute it. from proceeding in

the lawful exercise of his functions. It is not necessary for him to proceed to the length of a personal conflict with the defendant, for that would constitute a distinct offence in the defendant, even though the officer should succeed. In this case, the defendant retained, by force, the possession of the house, and threatened to take the life of the officer, if he should attempt to execute the writ; in consequence of which he was prevented from doing it. Should this be your opinion of the evidence, your verdict must be against the defendant.

The jury, in each case, found the defendant guilty.

NOTE [from 1 Am. Law J. 232]. The circuit court of the United States proceeded to pronounce sentence on Morrow Lowrey, Andrew Lowrey, and John Lowrey, convicted of opposing the deputy marshal, when executing writs of possession issued from that court. An excellent admonition was delivered by Judge Washington to the prisoners, previous to pronouncing sentence. The prisoners were separately indicted for obstructing the execution of the process of the circuit court of the United States, on the twenty-second section of the act of congress passed April 30, 1790 [1 Stat. 112], which enacts, "that if any person or persons shall knowingly and wilfully obstruct, resist or oppose any officer of the United Staes, in serving or attempting to serve or execute any mesne process or warrant of any rule or order of any of the courts of the United States, or any other legal or judicial writ or process whatsoever, or shall assault, beat or wound any officer or other person, duly authorized in serving or executing any writ, rule, order, process or warrant aforesaid, every person so knowingly or wilfully offending in the premises shall, on conviction thereof, be imprisoned not exceeding twelve months, and fined not exceeding three hundred dollars." It appeared in evidence that Robert Bowne, a citizen of the state of New York, had obtained judgments in ejectments against Morrow, Andrew and John Lowrey, for the premises held by them respectively, and that writs of possession issued from the circuit court to restore the possession of Mr. Bowne. The deputy marshal in proceeding to execute these writs, found the prisoners with others, their associates, on the premises armed in their defence; the doors of their houses closed against him; admittance refused him; and they moreover threatened to take his life if he persisted to execute the process, declaring at the same time they would lose their own lives in defending the possession. He was obliged in consequence to desist from executing the process, and return home.

"Sentence: Morrow Lowrey. Andrew Lowrey, John Lowrey! You severally stand convicted, two of you by juries composed of your fellow citizens, and the third by confession in open court, of a successful though temporary opposition to the laws of your country. by resisting the legitimate authority of an officer in this court in the regular discharge of his duty. You have experienced on your trials every indulgence which the court could grant, and have had the assistance of able counsel to defend you. Every objection in point of law which had the semblance of plausibility was urged in your behalf: for, unfortunately for you, no circumstance occurred in the evidence, which could cast a doubt over your guilt. or extenuate its enormity. Is it possible that you could for a moment have entertained the expectation, that it was in your power to obstruct, with effect, the streams of justice, which give life to the political body, and by which that liberty which we all profess to love, is refreshed and invigorated? Did it never occur to you, that if a

few interested and misguided men of your neighborhood sanctioned your lawless conduct, that a better intelligence and superior interest would nerve, if necessary, the arms of a thousand fold your number to crush you? Guarded as she is by all the power of this nation, justice sits securely on her seat, and issues her lawful mandates, which no force can successfully resist, but such as is strong enough to overthrow the whole fabric of the constitution. From the nature of our government, it must be so. The courts of justice are the sanctuaries of the law; and it is through the law that our government speaks and acts. Impair, by any means, the power of these tribunals in the lawful exercise of their functions, and you attack the majesty of the law, and sap, most essentially, the foundations of the republic. The government, in a degraded state, may survive the shock, but it ceases to be a government of laws; and liberty expires when force, the only remaining alternative, becomes necessary to coerce obedience to the will of the nation. Recollect that the state of Pennsylvania, powerful and respectable as she is, forms but a small part of the United States; and that the district of Erie, though it were united in a common effort inimical to the tranquility of the whole nation, is but a spot on the map of the state. What folly then could tempt you, who with your associates, if you have any, are I trust an inconsiderable minority in your district, to raise your hands against the government of your country, acting lawfully through one of its constitutional organs? You might for a day or a month impede the administration of justice in your particular cases. But it was utterly impossible that your triumph could be more than temporary, and with a certain loss of possessions which were not legally yours, you doomed yourselves to imprisonment, and to loss of property to which you were entitled. Should you deem too severe the punishment which the law decrees for your offence, reflect for a moment what had been your situation had the officer persisted in his attempt to do what prudence forbade (but which the laws would have sanctioned,) and you had executed the threats which you wickedly denounced against him. Your lives must then have atoned to your country for her violated laws; but where was the circumstance to extenuate your guilt in the eyes of an offended God? Suppose you could have influenced numbers to assist you in opposing the execution of the law, how would your guilt have been increased by the treason and punishment of those you had deluded! I mention these circumstances with a view to impress upon your friends the conviction of this truth, that the highest crimes, against the laws of God and of society, are in the train of the offence of which you are guilty. There is every reason to believe, that had the officer been less prudent, you had, in acts at least, been more criminal. The court has carefully perused the papers which you requested to be read, with a view, as was supposed, to extenuate your offences, and mitigate your punishment. We have to regret, however, that in these documents we discover nothing but an effort, which ignorance only could have suggested, to justify rather than to excuse yourselves. You complain that the judgments in ejectment upon which the process of execution issued were not sanctioned by the principles of law, were rendered by an incompetent tribunal, and were unfairly obtained. Were we for a moment to admit that these objections were well founded, were there no other means by which you could be redressed, but by a resort to force? If the judgment of this court were erroneous in point of law, it was subject to the correction by a higher tribunal, as capable, as it would have been ready, to rectify our mistakes. To this tribunal an appeal was made in a case resembling yours in its essential features, for the purpose of obtaining a just exposition of the law of 1792, the great point in the cause, and there it was investigated by professional talents which would do honor to any country. The decision was against your title, and it became the duty of the presiding judge of this court, who had entertained a different opinion, as it was certainly yours, to submit to this high authority. The question of jurisdiction in your particular cases was decided in this court, how correctly in point of law, it would ill become me to say, but I dare aver that the judgment was influenced by no considerations which could impeach its purity. That the trial, so far as came within our view, was fairly conducted, can be attested by those whose evidence would not be suspected. That it was ably and faithfully managed by your counsel, no man will doubt, who knows who your counsel were. The declaration imputed to the judges of the court, which it is said misled you, is not true; the opinion given in the cause was in direct opposition to the pretended declaration, and it is absurd to suppose that declaration could have been at variance with the former. I should not have condescended in this way to vindicate the justice and integrity of this court, did I not feel a sincere desire to satisfy you, if I can, how grossly you have been deceived by others, or have deceived yourselves, and how totally groundless were the pretexts which led to your misconduct. That you have been misled I can readily believe. Your conduct has evinced either great ignorance or great depravity. Charity teaches us to impute it to the former; and influenced by this consideration, we are induced to diminish your punishment, which would have been otherwise extended as far as the law would sanction. We feel less reluctance on this occasion, in exercising to your advantage the discretion which the law reposes in us, from the hope that when you return to your families, you will carry with you more correct notions of the duties which you owe to your country and its laws, and that the punishment, mitigated as it is, will prevent the repetition of similar offences by yourselves or others. The law authorizes the court to condemn you to twelve months imprisonment, and the payment of three hundred dollars. The sentence which we pronounce is, that you Morrow Lowrey, Andrew Lowrey and John Lowrey, be severally imprisoned for three months, and do pay to the United States each the sum of one hundred dollars, besides the cost of these prosecutions, and that you stand committed until the same be paid, and further that you severally enter into recognizances with sureties to keep the peace and be of good behavior for one year from the expiration of the said three months, each of you in the sum of one thousand dollars, and two sureties in each recognizance in five hundred dollars each."