16865

STATE v. SELF
(82 S. E. (2d) 63)

*Messrs. Law, Merritt & Kirkland,* of Columbia, *for Appellant,*

*T. P. Taylor, Esq., Solicitor,* of Columbia, *for Respondent.*

May 10, 1954.

TAYLOR, Justice.

Appellant was tried and convicted in the Court of General Sessions for Richland County upon an indictment charging robbery, larceny, and assault and battery with intent to kill and was sentenced to serve fifteen years upon the robbery charge and ten years upon the assault and battery with intent to kill charge, said sentences to run concurrently.

Appellant now comes to this Court contending that there was error in the presiding Judge's charge in that he failed to charge the law applicable to "assault and battery of a high and aggravated nature, assault and battery and simple assault."

A review of the testimony reveals that the prosecuting witness, Sgt. Carl Vinson, then stationed at Ft. Jackson, South Carolina, in company with Appellant and one Archie Gantt were riding in and about the City of Columbia when they stopped in an outlying area and Vinson was struck from

behind, knocked to the ground and relieved of his pocketbook containing approximately $250.00. They had been together approximately two hours and some whiskey and beer had been consumed, evidently a considerable quantity of beer by the prosecuting witness.

Where one is charged with the crime of assault and battery with intent to kill the gist of the offense is the intent, though there must also be some action in the direction of such an intent and the agency used to effect the intent may or may not be sufficient for the purpose, *State v. Glover,* 27 S. C. 602, 605, 4 S. E. 564. The general rule is that an indictment for a higher offense will sustain a conviction for a lower offense included in the higher. This Court in *State v. Knox,* 98 S. C. 114, 82 S. E. 278, 279, after stating the aforesaid rule held that it was not error for a presiding Judge "to refuse to submit the question of [simple] assault and battery to the jury, under an indictment for assault and battery with intent to kill, unless there is testimony tending to show that the defendant is only guilty of assault and battery." And in *State v. Jones,* 133 S. C. 167, 130 S. E. 747, 751, we find that while there is no statutory definition of the offense of assault and battery in this state, that such has been divided through common usage into three degrees: (1) Assault and battery with intent to kill and murder; (2) assault and battery of a high and aggravated nature; (3) simple assault and battery. "The first degree contains all of the elements of murder except the actual death of the person assaulted; so that before the accused can be convicted of this charge, the jury must be satisfied beyond a reasonable doubt, from the evidence, that if the party assaulted had died as a result of the injury, the defendant would have been guilty of 'murder,' which is defined in section 1 of the Criminal Code [Code 1952, § 16–51], as 'the killing of any person with malice aforethought, either express or implied.' It is apparent that there must be, not simply the intent to kill, for that may be present in a case of manslaughter, but the intent to kill accompanied with malice, the distinguishing

element between murder and manslaughter. * * * 'Assault and battery of a high and aggravated nature' is an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation, such as the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, the great disparity between the ages and physical conditions of the parties, a difference in the sexes, indecent liberties or familiarities with a female, the purposeful infliction of shame and disgrace, resistance of lawful authority, and others." See, also, *State v. Johnson,* 187 S. C. 439, 198 S. E. 1.

A review of the testimony reveals the following:

"Q. After he hit you, did you realize anything then was happening to you? A. Yes, sir. I fell right down under the right-hand side of the automobile, right under the rear bumper, and I tried to fight my way out of there, that is, out from under it, and he kicked me, and I saw then, or I realized—I was so dazed, but I still realized—

\* \* \*

"Q. Do you know what Self hit you with? A. No, sir, I couldn't positively say, but I could see that it was about that long (indicating).

"Q. What did it look like? A. It looked like a black-jack.

"Q. It looked like a black-jack? A. Yes, sir.

\* \* \*

"Q. Well, then, you passed out after the car left? A. I was just in a daze, but I remember seeing the automobile pull off.

"Q. All right, sir. Now, you were hit, according to your testimony here today, with a long object, about so long (indicating)? A. That's right.

"Q. That you considered to be a black-jack today? A. That's right.

"Q. Did you ever see a black-jack that long (indicating)? A. That's right.

"Q. They don't call them billies in Milledgeville? A. No, it's still a black-jack.

"Q. You say you saw one about that long (indicating)? A. I didn't say it was that long.

"Q. Well, let's get down to how long it was. A. Well, about twelve inches.

"Q. How many black-jacks have you ever seen twelve inches long? A. I know of one that belongs to my daddy.

"Q. And that's the first thing that popped into your mind when you got on that stand today, isn't it? A. No.

"Q. Now, today you say you were hit with a twelve-inch long black-jack over the left eye, is that correct? A. I didn't say it was a black-jack; I said I assumed it was a black-jack.

"Q. You assumed it was a black-jack? A. That's right.

"Q. Did you tell the Solicitor that you were hit with a twelve-inch long black-jack when this case was being investigated? A. I never talked to the Solicitor about this case until this morning.

"Q. Did you tell the officers that? A. I told them they hit me with something, I didn't know what, but that I assumed it was a black-jack.

"Q. You told these gentlemen here today it was a black-jack.

"The Solicitor: No, he didn't, your Honor.

"Mr. Duncan: You assume it was a black-jack?

"The Witness: I assume it was a black-jack.

"The Solicitor: Wait a minute, Mr. Duncan.

"Mr. Duncan: Now, if your Honor pleases, the Solicitor——

"The Solicitor: In fairness to the witness, your Honor, Counsel shouldn't misquote what he said. The witness has never said it was a black-jack. He said that he assumed it was something that looked like a black-jack."

It is, therefore evident that the testimony is not clear as to what the witness was struck with and the jury evidently had some difficulty concerning this phase of the case as they twice returned to the courtroom for further instructions, on one of which the following transpired:

"The Foreman: Your Honor, we would like an interpretation of whether this matter of assault and battery with intent to kill is one charge, or can it be separated?

"The Court: Let me see if I understand you. There are three counts in the indictment that I charged you on: First, the robbery count, and, second, the larceny count, and third, the count of assault and battery with intent to kill.

"The Foreman: We want to know can that be separated? Is that one count that cannot be separated, or can it be separated and can you say, 'Guilty of Assault and Battery' without saying 'intent to kill'?

"The Court: No, sir, I did not charge you on any other form of assault and battery except assault and battery with intent to kill. Does that answer your question?

"The Foreman: Yes, sir.

"The Court: All right, sir, you may retire."

We are of the opinion that when the testimony heretofore referred to is considered in the light of the foregoing principles, the definition of the crime of assault and battery of a high and aggravated nature and the law applicable thereto should have been charged, but not that of simple assault as contended by Appellant.

Appellant next contends that the Court committed error in sentencing him for a term of fifteen years in that such sentence would be proper only where a deadly weapon was used as set forth in Section 16–333 of the 1952 Code of Laws for South Carolina. We are inclined to agree and are of the opinion that he should have been sentenced under the provisions of Section 17–553 which must be construed in conjunction with Section 17–552, *State v. Edwards,* 127 S. C. 116, 120 S. E. 490; however, being of the opinion that the evidence is sufficient to sustain Appellant's conviction upon the robbery charge, the conviction upon this count is sustained but the sentence is set aside and the case remanded for a proper sentence on this charge; see *State v. Collins,* 125 S. C. 267, 118 S. E. 423; *State v. Baker,* 58 S. C. 111, 36 S. E. 501.

For the foregoing reasons, we are of the opinion that the judgment and sentence of the Court should be set aside and the case remanded to the Court of General Sessions for Richland County for a new trial upon the charge of assault and battery with intent to kill and resentencing in accordance with the views heretofore expressed upon the robbery charge.

Reversed and remanded.

STUKES and OXNER, JJ., and Moss, Acting Associate Justice, concur.

BAKER, C. J., not participating.