## 17165

THE STATE, Respondent, v. TOM B. ANDERSON, Appellant

(93 S. E. (2d) 210)

404

*Tom B. Anderson, Esq., pro se,* of Columbia, *for Appellant.*

*Messrs. T. P. Taylor, Solicitor,* and *John W. Foard, Jr., Assistant Solicitor,* of Columbia, *for Respondent,*

May 21, 1956.

OXNER, Justice.

Appellant, a member of the Columbia Bar, was convicted of "breach of trust with a fraudulent intention", Section 16-365 of the 1952 Code, and sentenced to imprisonment for a period of three years. Although no question is raised as to the sufficiency of the evidence to sustain the verdict, a rather full review of the circumstances leading up to the prosecution is necessary for a proper understanding of the exceptions.

The prosecuting witness, M. B. Swindler, agreed to purchase from one J. F. Hipps 90 acres of land in Richland County for $2,500.00. On the afternoon of February 17, 1955, these parties, along with appellant, met in the office of a real estate agent in Columbia to close the transaction. Appellant had not previously known Swindler but had represented Hipps in several real estate transactions. He had examined the title to this 90 acre tract when it was acquired

by Hipps several weeks prior to the sale to Swindler. According to Swindler, appellant represented at this meeting that the only encumbrance on the property was a mortgage for $1,500.00 held by the Lower Main Street Bank of Columbia. It was first contemplated that Swindler would assume payment of this mortgage and pay in cash the remaining portion of the purchase price, amounting to $1,000.00. Swindler finally decided, however, to pay the entire purchase price in cash. He gave a check to Hipps for $1,000.00 and a check to appellant for $1,500.00. Hipps gave Swindler a receipt acknowledging the payment of $2,500.00 "in full consideration of deed this day delivered to M. B. Swindler". Appellant executed the following receipt: "Received $1,-500.00 of above $2,500.00 in full for satisfaction of all liens and mortgages." Appellant also gave Swindler a certificate of title in which he certified that the property was free of all liens and encumbrances "except such mortgages as will this day be satisfied under my own personal supervision; such satisfaction to be forthwith recorded in the Office of the Clerk of Court for Richland County."

It subsequently developed that at the time of the execution of the deed to Swindler there was outstanding of record three mortgages against the property, aggregating $5,750-.00. One Safran held a mortgage in the sum of $1,250.00. Another in the sum of $3,000.00, executed on November 29, 1954, was given by Burnice R. Slice to Edgar L. Dreher and on November 30, 1954 was put up by Dreher as collateral for a loan of $2,000.00 from the Lower Main Street Bank. A few days after the bank made the loan, it was discovered that just prior to the recording of the $3,000.00 mortgage, Burnice R. Slice had conveyed to a third party a portion of the mortgaged premises. When the bank discovered this, Dreher was requested to make some arrangement to cover this deficiency in the bank's security. There was then delivered to the bank as additional security for the $2,000.00 loan a mortgage for $1,500.00. All three mortgages above mentioned covered portions of the property later conveyed to Swindler, as well as other lands.

Dreher testified that there was no consideration for the $3,000.00 mortgage and that he merely took it as an accommodation to obtain for Slice a loan from the bank of $2,000.00. But taking the most favorable view of the situation, at the time appellant gave the certificate of title to Swindler and received the sum of $1,500.00 for the purpose of satisfying all liens on the property, there was outstanding the $1,250.00 mortgage and the two mortgages held by the bank as collateral for a loan of $2,000.00 making a total of $3,250.00. It seems to be undisputed that appellant had full knowledge of the existence of the above mortgages. In fact, he had either prepared or witnessed them.

The check for $1,500.00 given by Swindler to appellant on February 17th was cashed by the latter on the following day, but nothing was done at that time toward removing any of the encumbrances above mentioned. Some time about March 1st, as a result of some other rather unusual real estate transactions, appellant paid to the bank the sum of $700.00 which was credited on the $2,000.00 note, and the bank reassigned the $1,500.00 mortgage to Dreher, who later satisfied it. At the time of the trial there was still outstanding of record the $3,000.00 mortgage pledged to the bank and the $1,250.00 mortgage held by Safran.

Swindler assumed that the bank had been paid and that his land was free of encumbrances and did not learn otherwise until around June 1st when he was informed by the attorney for the bank that the latter held the $3,000.00 mortgage. Swindler says that he immediately got in touch with appellant and demanded that he either clear the title or return the $1,500.00 but appellant neglected to do either. Swindler then employed an attorney. On June 27, 1955 appellant offered to arrange to take the property off Swindler's hands and reimburse him for the purchase price upon the execution of a quitclaim deed to the property. Swindler's attorney immediately accepted this offer but appellant failed to carry out this arrangement. Finally, in August a warrant was issued against appellant, charging him with fraudulently

appropriating to his own use the $1,500.00 paid to him by Swindler.

The case was tried in September, 1955. When cross examined by the Solicitor as to whether he still had on hand the sum of $800.00, representing the amount of $1,500.00 received less $700.00 paid to the bank, appellant admitted that he did not have this amount in the bank, stating that it was "in my safekeeping and custody" but refused to say where.

Appellant testified in substance that when he accepted the sum of $1,500.00, he had every reason to believe that the lands purchased by Swindler could be released from the mortgages for a sum not in excess of $1,500.00 and he still thought this could have been accomplished had it not been for the commencement several days later of "a civil action of an origin extraneous to this particular matter" involving the property covered by the mortgages and various other tracts of land in that area. Appellant denied that Swindler ever requested him to refund the sum of $800.00 or any other amount. He admitted on the trial of the case that when he gave Swindler the certificate of title and received the $1,500.00, he didn't tell Swindler about the various mortgages and his plan to have the property released therefrom "because it wasn't any of his business."

We now turn to the exceptions. The first is that the Court erred in refusing appellant's motion for a continuance upon the ground of the absence of an alleged material witness and upon the further ground of the pendency of a civil action affecting a number of tracts of land, including that purchased by Swindler. Although the requirements of Circuit Rule 27 were called to appellant's attention, he neglected to state what facts he believed the witness, if present, would testify to. Moreover, if we assume that his testimony would have been along the lines stated in appellant's brief, we find no relevancy in it. Nor is it shown how the result of the civil proceeding could have had any material bearing on the charge against appellant.

Under the second exception it is contended that the Court erred in refusing to allow appellant to ask Swindler whether he would have been injured or damaged if the property conveyed had been released from the mortgages instead of having same satisfied. The witness had previously answered a question of similar import. In addition this was a mere matter of argument.

The exclusion of the testimony complained of in the third exception arose as follows:

"Mr. Anderson: Now, Mr. Hipps, I will have to repeat that question: At the time you purchased this ninety acres, which you subsequently deeded to Mr. Swindler, you knew, did you not, of the existence of another sixty acres covered by that same mortgage?

The Witness: Yes.

Q. And you knew, however unusual it might be, that you had made arrangements with me, or with the purchaser of the other land, so that you didn't have to satisfy that mortgage immediately to release the sixty acres, didn't you?

The Solicitor: Now, your Honor, that's about sixty acres, another piece of land, that doesn't affect us.

The Court: The sixty acres isn't the Swindler land?

Mr. Anderson: No, sir, but it's included in the Swindler mortgage.

The Court: I will have to sustain the objection."

We think the ruling of the Court was correct.

It is next contended (Exception 4) that the Court erred in refusing to admit testimony "as to the nature and pendency" of a civil action which was commenced after appellant received the $1,500.00. He contends that the details of this action would have shown the impossibility of his carrying out his contemplated plan of having the Swindler property released from the liens of the mortgages. Appellant was permitted to state that the lands became involved in litigation after which Safran and the bank would not release the liens of their mortgages except

upon payment of the full amount of the indebtedness. We cerainly see no error in refusing to permit him to go into details of this civil controversy. The pendency of this action would not justify the appropriation by appellant of the funds entrusted to him and if he could not secure a release of the mortgages, it became his duty to return the $1,500.00 to Swindler. This he never sought to do prior to the trial of the case and, as previously pointed out, was not in a position to even return $800.00 of this amount.

The testimony claimed to have been erroneously excluded by Exception 5 is as follows:

"Q. Now, you have in front of you a $1,250.00 mortgage on those two forty-eight acre tracts, do you not? A. Yes, sir.

Q. Now, I ask you wouldn't the mortgage to the Lower Main Street Bank, even though it constituted a second mortgage on that ninety-six acres, wouldn't it be of some value as collateral to the bank?

The Court: I don't think that's relevant. I rule that out. Don't answer it.

Mr. Anderson: When you went up to look at this land— I guess you had better not answer this until the Judge rules on it, but when you went to look at the land, will you state whether or not, in your opinion, those two tracts of land were worth in excess of $1,250.00?

The Court: I rule that out."

We find no error.

Appellant is not in a position to complain of the admission of the testimony referred to by Exception 6. He had previously opened up the question. Moreover, the answers complained of were favorable to him.

Exceptions 7, 8 and 9 are as follows:

"7. That His Honor erred in refusing to allow the witness, Melton Kligman, to testify as to discrepancy in title.

8. That His Honor erred in refusing to allow the Defendant to describe in detail the transaction wherein Hipps and

Gerringer received title to certain lands encumbered by the same mortgage.

9. That His Honor erred in refusing to allow the witness, Kligman, to testify in detail concerning a certain option to purchase and his reasons for not exercising same."

After careful examination of the record, we are satisfied that the transactions mentioned in these exceptions were irrelevant and properly excluded.

■ Error in refusing a motion for a mistrial is charged in Exception 10. During the cross-examination of the witness Dreher, the Solicitor asked the witness whether or not he had been convicted of receiving stolen goods. He answered in the negative and the matter was not further pursued. Later in the day appellant moved for a mistrial on the ground that the question was improper and highly prejudicial. The motion was refused but the jury was instructed to disregard the question and the Court further stated to the jury: "You are not to draw any inference at all that the witness had been so convicted, but completely disregard that in your deliberations." This incident was clearly insufficient to warrant a mistrial.

■ The complaint is made by Exception 11 that the Court erred in denying appellant the right to bail during the pendency of a motion for a new trial. The jury returned a verdict of guilty on Friday at 5:50 p. m. and sentence was thereupon imposed. Some time thereafter a member of the Columbia Bar stated that at appellant's request he was making a motion for a new trial "upon grounds to be argued next week." The trial Judge replied that appellant had already been sentenced but he would nevertheless allow him to make a motion for a new trial and argue it the following week. This attorney then asked that the Court fix bond pending the hearing of the motion. The trial Judge concluded that he couldn't allow bail pending the hearing of the motion. Counsel thereupon served notice of intention to appeal and the Court fixed bail in the amount of $5,000.00.

The gist of the complaint is that in order to obtain immediate bail, appellant had to forego his motion for a new trial. However, he had an opportunity to make such a motion prior to being sentenced but did not do so. The trial Judge was also agreeable to entertaining the motion after sentence but appellant asked that it be carried over until the following week. There is no basis for the complaint made by this exception.

It is charged in Exception 12 that the sentence was excessive. This was a matter entirely within the discretion of the Court.

It is contended by Exception 13 that the Court erred in not instructing "the jury that the defendant was not on trial because of any certificate of title." At the conclusion of the charge the jury was temporarily excused as required by Section 10-1210 of the 1955 Supplement to the Code and appellant given an opportunity to make any requests. He offered none. Failing to do so, he cannot now complain.

All exceptions are overruled and the judgment is affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.