### 17409

The STATE, Respondent, v. GENTLEE HOLLMAN, Appellant

(102 S. E. (2d) 873)

*F. Ehrlich Thomson,* Esq., of Columbia, *for Appellant,*

*Messrs. Julian S. Wolfe,* Solicitor, of Orangeburg, *Henry L. Lake,* of St. Matthews, *T. C. Callison,* Attorney General, and *William F. Austin,* Asst. Attorney General, of Columbia, *for Respondent,*

· · April 8, 1958.

LEGGE, Justice.

Appellant was tried in May, 1957, under an indictment containing two counts, *viz.*: (1) resisting an officer; and (2) assault and battery with intent to kill and murder. He was not represented by counsel at the trial. The jury having returned a verdict of guilty on the first count and, on the second count, guilty of assault and battery of a high and aggravated nature, the trial judge sentenced him: on the first count, to serve at hard labor for four years or· pay a

fine of $1,000.00; and on the second, to serve at hard labor for three years or pay a fine of $1,500.00; the sentences to run consecutively in the order named. Thereafter, in due time, he served notice of appeal to this court and the following "Grounds For Appeal";

"1. Conviction based upon incompetent evidence and prejudice *per se*.

"2. Denied the Constitutional right to the assistance of counsel after request therefor.

"3. Denied the right to have women on jury.

"4. Denied the Constitutional right to have colored people on jury.

"5. Sentence was imposed in violation of the laws and Constitution of the United States and the State of South Carolina.

"6. Sentence is in excess of maximum authorized by law".

Thereafter, appellant filed with this court a document, obviously prepared by himself, designated "Application For a Writ of Certiorari", wherein he charged, in addition to the "Grounds For Appeal" before mentioned, that: (a) "the evidence produced by the prosecution was not sufficient to support the allegations contained in the indictment;" and (b) "the two counts in the alleged indictment constitutes one single continuous criminal act inspired by the same criminal intent". Thereupon the Chief Justice by order dated October 17, 1957, appointed F. Ehrlich Thomson, Esq., an experienced and able member of the Richland County bar, "to represent appellant and present his appeal".

In his brief, appellant's counsel states the "Questions Involved'" as follows:

"1. Did the court's refusal to appoint counsel to represent defendant deny defendant 'due process of law' guaranteed by the Fourteenth Amendment of the Constitution of the United States?

"2. Was the defendant deprived of the right of a jury trial and the due process of law guaranteed by both the State

and Federal Constitutions by the failure to swear the jury as required by Title 38, Section 210, Code of Laws of South Carolina, 1952?

"3. Under the facts of this case, was a single crime committed or were there two distinct and separate crimes committed?

"4. Was it error, under the facts of this case, to submit the case to the jury upon the charge of resisting an officer in the discharge of his duty and also the charge of assault and battery with intent to kill and murder?

"5. Is there sufficient evidence in the record to sustain defendant's conviction of assault and battery of a high and aggravated nature?

"6. Was it error, under the facts of this case, for the trial judge to charge the law with reference to assault and battery with intent to kill and murder?

"7. Was it error, under the facts of this case, for the trial judge to charge the law with reference to assault and battery of a high and aggravated nature?

"8. Was it error, under the facts of this case, for the trial judge to fail to charge the law with reference to simple assault?

"9. Was it error, under the facts of this case, for the trial judge to sentence the defendant for the crime of resisting arrest and also for the crime of assault and battery of a high and aggravated nature?"

There is no real controversy as to the circumstances leading up to the appellant's arrest and subsequent indictment. The State presented two witnesses, both officers of the State Highway Patrol, namely: Corporal J. K. Westbury, who made the arrest, and Sergeant A. B. McLeod, who corroborated Corporal Westbury's testimony in certain particulars to which we shall later refer. The appellant did not testify, and the only witness offered by him testified that he was not present at the time of the arrest and that he knew nothing pertinent to the issues involved.

Corporal Westbury's account of the matter was as follows:

On February 14, 1957, while on duty, in uniform, on U. S. Highway 176 in Calhoun County, he observed, traveling toward him, a stakebody truck with no front license plate. Three negroes were in the cab. After passing the truck, he noticed that it was without cargo, and that it bore on the rear a Florida license plate. He then turned his patrol car around to follow it; and as he neared it the driver, appellant, pulled the truck over to the side of the road, stopped it, got out, and lifted its hood. Westbury, having stopped his car, walked up and asked appellant for his driver's license. Appellant produced an expired public service license and a bill of sale for the truck, but could produce no valid driver's license. After allowing him and the other occupants of the truck ample time to search for his license (he had told the officer that he had both a Florida and a South Carolina driver's license), Westbury told appellant that he would have to put him under arrest for having no driver's license and for investigation. Appellant then asked if he could put up bond for not having a driver's license in his possession. Westbury replied that he would have to detain him until he could check the bill of sale and ordered him to come with him. To quote from Corporal Westbury's testimony at this point:

"He started off in an orderly manner and all of a sudden he pulled back, then lunged right into me, grabbing around me about the gun. I tried to get him loose. I reached for my gun and he had it around the holster. I finally managed to get it loose. As I got loose from him I shot one time. He got back from me. At this time the party in the truck told him to go with the law, you can't resist. At that time he started back into me again. At that time I snapped the pistol but it didn't shoot. At this time he fell down on his knees, threw up his hands and said, 'You got me'. I told him to get up and in the patrol car. He got up. I opened the door and he got in the car and sat down. I went around to the driver's side and got my handcuffs and started to put those on him.

He did not want them put on. He said, 'The only thing you want to put them on for is to beat me to death'. I told him 'No, but I would have to put the handcuffs on you'. I brought him down to Dr. Huff's office for treatment. I had hit him in the foot with that bullet. We then met Sergeant McLeod at the County Jail. * * *

"Q. Mr. Westbury, were you in full uniform on February 14th, the day of this occasion? A. I was in full uniform. I had on a jacket which he tore when he grabbed for my gun.

* * *

"When he came into me I pulled around and he got hold of the coat and split it wide open.

"Q. Mr. Westbury, was the defendant under arrest when he attacked you? A. He was under arrest and had started to the car with me and that is when he drew back and lunged on me.

"Q. Did he knock you from your feet or anything? A. No, sir, he did not get me off my feet. I managed to stay to my feet but he had around me and had his hand around the gun holster.

"Q. He had his hand—A. He had his hand around the holster of the gun. I managed to get it loose."

Sergeant McLeod testified that in response to information received on the police radio he went to the county jail and there met Corporal Westbury and the appellant; that he asked appellant what had happened, and appellant refused to make any statement; that witness noticed that Corporal Westbury's coat was torn.

We note at the outset that the "Questions Involved" as stated in the brief of appellant's counsel purport to include issues not attempted to be raised by appellant's "Grounds For Appeal". The transcript of record discloses, moreover, that not one of the questions sought to be presented by either the "Grounds For Appeal" or the "Questions Involved" was raised in the trial court. None of these questions being properly before us, *Simonds v. Simonds,* 229 S. C. 376, 93 S. E. (2d) 107, our considera-

tion of any of them must be given, if at all, as a matter of grace, not of right.

Nor is appellant in better position to urge consideration of these questions because of the fact that he was not represented by counsel at the trial. It is true that where one has conducted his defense in person technical rules are to be applied with much less stringency than where he has been represented by counsel. 14 Am. Jur., Criminal Law, Sction 169, p. 884; *State v. Owens,* 124 S. C. 220, 117 S. E. 536. But established rules of procedure are not to be discarded, either in the trial court or on appeal, merely because the defendant has been his own lawyer. Our custom of long standing requires that we relax them in capital cases even when the defendant has been represented by counsel, *State v. Waitus,* 226 S. C. 44, 83 S. E. (2d) 629; *State v. Green,* 227 S. C. 1, 86 S. E. (2d) 598; but in cases not capital our power to do so should be exercised only when necessary to prevent a manifest miscarriage of justice.

In the light of the foregoing principles, but one of the issues sought to be raised here deserves consideration. We shall, however, in passing, refer to the others sufficiently to show their lack of merit even had they been timely presented.

The record before us furnishes no foundation for appellant's contention (Grounds For Appeal, 1) that his conviction was based upon incompetent evidence and prejudice. Moreover, no objection for incompetence was made to any testimony; the "Ground For Appeal" fails to comply with Section 6 of Rule 4 of this court, *Tate v. LeMaster,* 231 S. C. 429, 99 S. E. (2d) 39, and the contention sought to be raised by it, not having been argued on appeal, is deemed to have been abandoned. *Saxon v. Saxon,* 231 S. C. 378, 98 S. E. (2d) 803.

Also without merit is the claim (Grounds For Appeal, 2; Questions Involved, 1) that appellant was denied his constitutional right to be represented by counsel in the trial court. The record here shows that when

the case was called for trial his rights were explained to him and he stated to the court that he had no lawyer, but would conduct his own defense and was ready for trial. Only after the close of all of the testimony, when the trial judge asked if he desired to argue his case before the jury, did appellant request that the court appoint an attorney "to make the argument to the jury". Refusal of this request was not error. Appellant had the right, under Article I, Section 18 of the Constitution of this State, "to be fully heard in his defense by himself or by his counsel or by both". To the same effect is Section 17-506 of the 1952 Code. He does not contend that he was deprived of that right; his complaint is that the court did not assign counsel to make the argument for him. But there is in this State no constitutional or statutory requirement that the court assign counsel for any person accused, except where the offense charged is a capital one. Code 1952, Section 17-507. The Sixth Amendment of the Constitution of the United States applies only to trials in federal courts. *Betts v. Brady,* 316 U. S. 455, 62 S. Ct. 1252, 86 L. Ed. 1595. If, as is suggested in the case last cited, refusal to appoint counsel for the defendant in a criminal case may in certain circumstances amount to denial of the due process required by the Fourteenth Amendment, it is manifest that the facts here warrant no such conclusion.

Grounds For Appeal, 3 and 4, not having been argued on appeal, are deemed abandoned. They are devoid of merit. Exclusion of women from service on the petit jury, required by Article V, Section 22 of the Constitution of this State does not violate the Fourteenth Amendment of the Constitution of the United States. 31 Am. Jur., Jury, Section 88, p. 620. And there is in the record no foundation for the suggestion of racial discrimination in the selection of the trial venire.

The sixth "Ground For Appeal" is without merit. No specific punishment being provided by statute either for resisting an officer or for aggravated assault and battery, the sentence upon conviction of either

offense is, by Section 17-553 of the Code, left to the discretion of the trial court. *State v. Dalby,* 86 S. C. 367, 68 S. E. 633; *State v. Charles,* 107 S. C. 418, 93 S. E. 136. Cf. *State v. Hall,* 224 S. C. 546, 80 S. E. (2d) 239; *State v. Self,* 225 S. C. 267, 82 S. E. (2d) 63.

Of the "Questions Involved", the second suggests ▮▮▮▮ that appellant was deprived of the right to trial by jury, and therefore denied due process of law, because the petit jury was not sworn as required by Section 38-210 of the 1952 Code. This contention is based solely upon the fact that the "Transcript of Record" on appeal as agreed upon among the solicitor, the assistant attorney general, and the appellant himself, does not state that the jury was sworn. As stated in the annotation following *Howard v. State,* 1917, 80 Tex. Cr. R. 588, 192 S. W. 770, in L. R. A. 1917D, at page 400, it is very generally held that the "record" of a criminal trial must affirmatively show that the jury was sworn, and if it does not, the conviction must be reversed. But it is apparent from examination of the readily available decisions mentioned in that annotation that the "record" referred to means the minutes, journal, and other records of the trial in the office of the clerk of the trial court. *Hubbard v. People,* 197 Ill. 15, 63 N. E. 1076; *State v. Mitchell,* 199 Mo. 105, 97 S. W. 561; *Slaughter v. State,* 100 Ga. 323, 28 S. E. 159. Rule 4 of this court, prescribing the contents of the transcript of record on appeal, does not require inclusion therein of a statement that the jury was sworn. Section 3 of that rule expressly provides that the "statement" shall be concise and shall contain nothing that is not necessary to a proper understanding and decision of the questions to be decided. Cf. *Spartan Mills v. Law,* 186 S. C. 61, 194 S. E. 653; *Franks v. Anthony,* 231 S. C. 191, 97 S. E. (2d) 891. The record before us discloses no factual basis to support the conclusion either that the jury was not duly sworn or that the fact of such swearing is not shown in the record of the trial in the office of the clerk of the lower court. No such issue is made by any of the

"Grounds For Appeal". No such defect in the trial record is to be presumed. On the contrary, presumption is always that a public officer has faithfully and correctly performed his official duties. 20 Am. Jur., Evidence, Section 170, p. 174; 43 Am. Jur., Public Officers, Section 511, p. 254; *Howell v. Littlefield,* 211 S. C. 462, 46 S. E. (2d) 47; *Whitmire v. Cass,* 213 S. C. 230, 49 S. E. (2d) 1.

Of the "Questions Involved", Nos. 5, 6, 7 and 8 may be considered together. Resisting lawful arrest is one form of the common law offense of obstructing justice. It is not defined by statute in this State; and, as before stated, punishment for it, not being otherwise specifically prescribed, is left to the discretion of the trial judge under the general statute, Code 1952, Section 17-553. Depending upon the circumstances of each case, resistance of lawful arrest may be a comparatively minor offense or one of very serious nature. It may be merely passive, for the use of force is not an essential ingredient of the common law offense. It may take the form of an assault and battery upon the arresting officer, in which event the degree of violence, the use or absence of a deadly weapon, and the other circumstances attending the attack upon him are factors to be considered in determining whether it should be characterized as simple assault and battery, or assault and battery of a high and aggravated nature, or assault and battery with intent to kill and murder. In *State v. Jones,* 133 S. C. 167, 130 S. E. 747, 751, the court said, *obiter,* that resistance of lawful authority might be a circumstance of aggravation sufficient to transform what might otherwise have been simple assault and battery into "assault and battery of a high and aggravated nature". See also *State v. Johnson,* 187 S. C. 439, 198 S. E. 1; *State v. Hariott,* 210 S. C. 290, 42 S. E. (2d) 385. We are not to be understood as saying that every assault and battery, however slight, upon an arresting officer, becomes an assault and battery of a high and aggravated nature because of the very fact that he was at the time engaged in making a lawful arrest. But in the proper exercise of his duties an arrest-

ing officer is the State itself; and the fact that he is attacked while properly performing his duty as an officer of the law is one to be taken into consideration, together with the other circumstances of the attack, in determining the gravity of the assault and battery upon him.

In the instant case the evidence may have warranted ▮▮▮ the inference that appellant was trying to wrest the officer's pistol from him and with it wound or kill him. The jury declined to draw that inference, for they acquitted him of the charge of assault and battery with intent to kill and murder and found him guilty of the lesser offense of aggravated assault and battery; but in view of Corporal Westbury's testimony we are of the opinion that the trial judge was not in error in charging the law with reference to the greater offense. There was certainly no error in charging the law of assault and battery of a high and aggravated nature; the evidence amply warranted conviction of that offense. There is room for doubt as to whether appellant was entitled to have the jury instructed concerning simple assault, in view of the arresting officer's testimony, which was not controverted. But the trial judge did charge, and adequately, we think, as to simple assault and simple assault and battery. Moreover, when, at the close of the charge, opportunity was offered to appellant (Code, 1957 Supplement, Section 10-1210) to object or request additional instructions, he did neither; and he thereby waived any right that he may have had to a fuller charge on simple assault. *State v. Anderson*, 229 S. C. 403, 93 S. E. (2d) 210.

We turn now to consideration of the fifth "Ground ▮▮▮ For Appeal" and the third, fourth and ninth "Questions Involved". They all point to the only substantial issue in the case, *viz.*: whether under the undisputed evidence appellant was guilty of two crimes or of only one. As before stated, this question was not presented in the court below and has not been raised in accordance with the rules of appellate procedure. The fifth "Ground For Appeal" is not specific enough to meet the requirement of Rule 4,

Section 6, of this court; the "Questions Involved" are, through no fault of appellant's counsel, technically not entitled to be considered as "exceptions" because not served within the time prescribed by Section 7-406 of the Code. But not always are the ends of justice best served by strict adherence to rules of procedure; if the record clearly discloses that there will be a miscarriage of justice otherwise, we should not hesitate to grant the relief necessary to prevent it. *State v. Owens, supra.*

. It is clear from the evidence here that appellant resisted arrest by violently attacking the arresting officer. That in the struggle the officer sustained no bodily injury did not alter the nature of appellant's offense. Under the principles to which we have referred, his resistance of arrest was in fact assault and battery of a high and aggravated nature. It is equally clear, however, that unless it may reasonably be concluded from the evidence that the resistance of arrest and the assault upon the officer were separate offenses, punishment for both should not be permitted to stand.

. It is elementary that a single act may constitute two separate offenses, warranting conviction and punishment of the offender for each. But this rule is applicable only where there are distinct elements in one offense which are not included in the other. 15 Am. Jur., Criminal Law, Section 389, p. 63. Thus if by a single act two persons are unlawfully killed, the killer may be tried for each homicide. *State v. Corbett,* 117 S. C. 356, 109 S. E. 133, 20 A. L. R. 328. And we have held that where an act (discharging a firearm within city limits) offends a municipal ordinance, conviction in the municipal court for that offense does not, in the absence of statutory prohibition, bar subsequent prosecution for an offense (assault with intent to kill) resulting from the same act that is beyond the jurisdiction of the municipal court. *State v. Butler,* 230 S. C. 159, 94 S. E. (2d) 761. But where the act involved in one charge is necessarily and inseparately involved in the other and merely incidental to it, one offense only is committed. 22 C. J. S. Criminal Law

§ 9, p. 60. For example, if one be found guilty of assault and battery of a high and aggravated nature, he cannot, for the same act, be later prosecuted for assault and battery with intent to kill. By like reasoning, one cannot be guilty both of stealing personal property and of receiving the same property knowing it to have been stolen. Cf. *In re Powell,* 241 N. C. 288, 84 S. E. (2d) 906; *State v. Coppenburg,* 2 Strob. 273, 33 S. C. L. 273; *State v. Rutledge,* S. C., 101 S. E. (2d) 289.

"The state cannot divide a single identical offense into two offenses and impose two punishments for one and the same act. * * * It is therefore an established rule that a prosecution for any part of a single crime bars any further prosecution based on the whole or a part of the same crime. When the facts constitute only one offense, although it may be susceptible of division into parts, as in larceny for stealing several articles of property at the same time, a prosecution to final judgment for stealing some of the articles will bar a subsequent prosecution for stealing any of the other articles taken at the same time". 15 Am. Jur., Criminal Law, Section 382, p. 58.

"The practice, in criminal pleading, of inserting in an indictment two or more counts, which relate to but one and the same offense, varying the counts to conform to the evidence, as it may be developed at the trial, is now well settled, and, indeed, justified by the most enlightened sense of justice". *United States v. Howell,* D. C., 65 F. 402, 403.

In the case last cited the defendant had filed a plea in abatement to the indictment, which in several counts had charged him with possession of counterfeit money, each count alleging his possession of a different denomination of coin. In discussing the issue raised by the defendant's plea, the court said:

"The defendant cannot be embarrassed or confounded in his defense, because if the three counts are, as it is claimed, all for the same offense, his defense on one count must nec-

essarily cover the others. Dividing the unlawful act into as many charges as there are denominations of coin can make no difference in proving, or, on the part of the defendant in meeting the proof of, the single possession of the various coins. * * * The fear that, in case of a conviction on more than one count, the defendant will suffer additional punishment, as though he had been convicted for several distinct offenses, is not real or substantial. It is no more true of this case than of all the other cases which have been referred to where the same system of pleading was employed. When the time for imposing sentence comes, if it does come, the rights of the defendant will be fully protected. No court would, for a moment, permit one convicted for a single offense, averred differently in two or more counts, to be sentenced on each of the counts as if for separate and distinct offenses".

Whether two counts of the same indictment in reality charge one offense, for which alone the defendant may be sentenced though he has been convicted under both counts, is a matter that has often been before the Federal courts and the courts of many states. In South Carolina similar question has been presented where a defendant has contended that his prosecution was barred because he had previously been in jeopardy for the same offense. The issue in the case at bar warrants reference to some of these decisions in this and other jurisdictions.

In *State v. Switzer,* 65 S. C. 187, 43 S. E. 513, we held that acquittal under an indictment charging attempted arson of a storehouse within the curtilage barred subsequent indictment for attempt to set fire, at the same time, to the same building, which in the latter indictment was not alleged to have been within the curtilage. In *State v. Dewees,* 76 S. C. 72, 56 S. E. 674, 11 Ann. Cas. 991, trial upon an indictment alleging breach of trust of a sum of money on a certain day was held to bar trial of the same defendant on a second indictment alleging breach of trust of funds of the same person in a different amount on a different date, the

variations between the two indictments being held immaterial. In *State v. Mitchell,* 98 S. C. 474, 82 S. E. 676, it was held that acquittal for burglariously breaking and entering a dwelling house in the nighttime with intent to steal barred subsequent indictment for entering, without breaking, the same house at the same time with the same intent.

In *Munson v. McClaughry,* 8 Cir., 1912, 198 F. 72, 76, 42 L. R. A., N. S., 302, the defendant has been convicted on two counts: (1) of burglary of a post office building with intent to commit larceny, and (2) of larceny of postage stamps and other property from the same building at the same time. On the first count he had been sentenced to imprisonment for five years; on the second, to imprisonment for one year, to begin after the expiration of the five-year sentence. Upon his application, after he had satisfied the sentence for burglary, for release on *habeas corpus,* it was held that the sentence to separate punishment for larceny was void, and that he was entitled to release. To quote from the opinion:

"The highest judicial tribunals of Massachusetts, Kentucky, Pennsylvania, and Georgia have decided that burglary with intent to commit larceny and larceny at the same time and as a part of the same transaction may not be lawfully punished as separate offenses, because they are parts of a single continuous act inspired by a single criminal intent. * * *

"The United States Circuit Court of Appeals for the Ninth Circuit, after a thoughtful review of the authorities, has decided that, where one is indicted in separate counts and convicted of burglary of a post office with intent to commit larceny under section 5478 [18 U. S. C. A. § 2115], and of larceny at the same time as a part of the same transaction under section 5456 or 5457 [18 U. S. C. A. §§ 2112, 1707], he can be lawfully punished for the burglary only. *Halligan v. Wayne,* 179 F. 112, 102 C. C. A. 410. And because in such a case the burglary and larceny are parts of a single continuous act, inspired by the same single criminal

intent, provable by the same evidence, because the arbitrary subdivision of such a single criminal act, inspired by the same criminal intent, into numerous offenses, is unauthorized and oppressive, because, after conviction of such a burglary, the subsequent trial for such a larceny in reality puts the defendant twice in jeopardy for the same criminal act and intent, and because this decision of the court of the Ninth Circuit is sustained by the eminent authority of its judgment and by the stronger and better reasons, its conclusions is followed and adopted by this court".

The *Munson case* was followed by *Stevens v. Mc-Claughry,* 8 Cir., 1913, 207 F. 18, 20, 51 L. R. A., N. S., 390, where the defendant had been convicted under both counts of an indictment charging (1) larceny of a mail pouch containing registered letters, and other letters and packages, and (2) larceny of four registered letters containing money, and embezzlement of their contents; and had been sentenced to separate punishment on each count. The court, holding that the sentence was void as to its excess above the maximum that could be imposed for a single offense, cited *Munson v. McClaughry, supra,* and the cases therein cited and followed, and said: "The principle upon which the decisions in these cases rests is that two or more separate offenses which are committed at the same time and are parts of a single continuing criminal act, inspired by the same criminal intent which is essential to each offense, are susceptible to but one punishment".

In *Morgan v. Devine,* 1915, 237 U. S. 632, 35 S. Ct. 712, 715, 59 L. Ed. 1153, the court rejected the reasoning of the *Munson* and *Stevens cases, supra,* and declared that "the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense where two are defined by the statutes".

In *Prince v. United States,* 1957, 352 U. S. 322, 77 S. Ct. 403, 1 L. Ed. (2d) 370, the defendant was charged under the Federal Bank-Robbery Act, 18 U. S. C. A. § 2113,

on one count with robbery, and on another count with entering the bank with intent to commit a felony. He was convicted on both counts and sentenced to twenty years on the first and fifteen years on the second, the sentences to be served consecutively. On certiorari the Supreme Court held that the crime of entering with intent to commit robbery merged with the crime of robbery when the latter was consummated, and that, the maximum punishment for robbery under the statute being twenty years, sentence in excess thereof was unlawful.

In *Costner v. United States,* 4 Cir., 1943, 139 F. (2d) 429, the defendant had been convicted on two counts, (1) for assaulting the custodians of mail with intent to rob them, and (2) for at the same time robbing them of the mail matter in their custody and, in effectuating the robbery, putting their lives in jeopardy by the use of dangerous weapons; and had been sentenced on the first count to serve five years and on the second to serve twenty-five years, the sentences to run consecutively. Held: that he could be sentenced only for the completed crime of robbery, under the second count, and that the sentence under the first count should be stricken as invalid.

In *Bell v. United States,* 349 U. S. 81, 75 S. Ct. 620, 99 L. Ed. 905, the defendant pleaded guilty to violation of the Mann Act, 18 U. S. C. A. § 2421 under two counts, each referring to a different woman transported, at the same time and in the same vehicle, in interstate commerce for the purpose of prostitution. He was sentenced to consecutive terms of imprisonment on each of the two counts. On certiorari it was held by the Supreme Court that, the statute not clearly providing otherwise, the offense was a single one and not liable to cumulative punishment, the controlling principle as stated in the majority opinion being that where the statute does not clearly and without ambiguity fix the punishment for an offense, doubt will be resolved against turning a single transaction into multiple offenses.

Somewhat pertinent to the issue before us is the holding in *Braverman v. United States,* 317 U. S. 49, 63 S. Ct. 99, 87 L. Ed. 23, to the effect that where conviction upon several counts of an indictment, each charging conspiracy to violate a different provision of the Internal Revenue Laws, is supported by evidence of but a single conspiracy, a sentence of more than the maximum penalty for a single violation of the conspiracy statute cannot be sustained.

As to the illegality of multiple convictions and sentences for crimes inherently involving continuity, see *Ex parte Snow,* 120 U. S. 274, 7 S. Ct. 556, 30 L. Ed. 658, and *Ex parte Nielsen,* 131 U. S. 176, 9 S. Ct. 672, 33 L. Ed. 118, both of which arose under the Acts of Congress aimed at the suppression of polygamy in the Territory of Utah, 22 Stat. 31, § 3.

In *Alderson v. State,* 201 Ind. 359, 168 N. E. 481, it appears that the defendant had drawn a pistol on an officer. He was found guilty: (1) of drawing a deadly weapon (statutory misdemeanor), for which he was sentenced to pay a fine and be imprisoned in the Indiana State Farm for six months; and (2) of attempting to commit a crime when armed with a pistol (statutory felony), for which he was sentenced to imprisonment for not less than one year and not more than five years. On appeal the court held that, the drawing of the pistol having been an essential part of the felony, the separate sentence for it was to be considered as surplusage and of no effect.

In *State v. Steadman,* 214 S. C. 1, 51 S. E. (2d) 91, the defendant had been tried under an indictment containing two counts, as follows: (1) violation of the code section making it a felony for one to produce an abortion causing the death of the unborn child, and (2) violation of another code section which made it unlawful for one to produce an abortion, Code 1942, §§ 1112, 1113. She had been convicted on the first count and sentenced to seven years' imprisonment; the verdict had been silent as to the second count. On appeal the judgment and sentence were set aside because the evidence

did not support conviction on the first count; and the case was remanded for new trial on the second count. Convicted upon that trial, she appealed, *State v. Steadman,* 216 S. C. 579, 59 S. E. (2d) 168, contending that, both counts of the indictment having been submitted to the jury at the former trial, her conviction on the first count implied acquittal on the second, and that therefore the trial court, by its refusal on the second trial to quash the indictment, had placed her twice in jeopardy for the same offense. The majority opinion on the second appeal rejected this contention, upon the ground that the inference of acquittal on the second count which had rested upon the existence of the verdict of guilty on the first count, had been removed by the reversal of that verdict on the first appeal. That opinion is of interest here because, in its discussion of double jeopardy, it restates the rule declared in *State v. Glasgow,* Dud. Law 40, 23 S. C. L. 40, *State v. Switzer, supra,* and *State v. Dewees, supra,* that in determining whether a former conviction is a bar to another prosecution the test generally applied is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first.

It is oversimplification to say that "the test of identity of offenses is whether the same evidence is required to sustain them". That test is, as was said in *State v. Switzer, supra,* useful and generally adequate. But it must be reasonably applied; inflexible literality in its interpretation can lead to absurdity. For example, in *State v. Switzer, supra* [65 S. C. 187, 43 S. E. 514], evidence that the storehouse was "within the curtilage" was not required to sustain conviction under the second indictment; in *State v. Dewees, supra,* evidence of the amount of money embezzled, and of the date of the offense, varied under the two indictments; and in *State v. Mitchell, supra,* evidence of breaking as well as entering was required under the first indictment, but not under the second; yet in each of those cases the prosecution under the second indictment was held double jeopardy.

The test above stated must, too, be considered in the light of the settled rule of law, to which we have already referred, that where the offense is essentially and substantially a single one, the state cannot divide it into two or more offenses and punish for each separately.

We need not speculate on whether appellant in the case at bar might properly have been punished as for two separate crimes, under the two counts of the indictment, if he had first passively, and thereafter violently, resisted his arrest. There is no evidence here of passive or non-violent resistance; the conclusion is inevitable that his assault upon the officer was the essence of, and inseparate from, his resistance of arrest. It follows that his conviction and sentence for aggravated assault and battery as a separate offense, cannot be permitted to stand.

Had the sentences under the two counts been ordered to run concurrently, appellant would be entitled to no relief here, for concurrent sentences do not impose double punishment, but rather a single punishment measured by the sentence for the highest grade of offense of which the defendant has been properly convicted. Into that sentence the other concurrent sentences merge; there is in fact no punishment in a shorter sentence that runs concurrently with it. An interesting discussion of the subject of concurrent sentences under multiple counts of an indictment where a single criminal act is a composite of several included offenses is to be found in the recent case of *People ex rel. Maurer v. Jackson,* 2 N. Y. (2d) 259, 159 N. Y. S. (2d) 203, 140 N. E. (2d) 282.

Had appellant been given a single general sentence on both counts, remand for resentencing would have been necessary because of the impossibility of determination by this court of how much of the sentence had been imposed with reference to the first count and how much with reference to the second. Cf. *State v. Kaufman,* 18 N. J. 75, 112 A. (2d) 721. But such disposition is not required here. The two offenses charged in the indictment were treated as separate crimes;

verdict was rendered on each count separately; and separate sentences were imposed. We cannot assume that in imposing sentence under the first count the trial court was influenced by the fact that punishment under the second was to follow upon its completion.

We affirm the judgment and sentence under the first count, resisting an officer; the offense charged under the second count having been, under the evidence here, an inseparable part of the crime of which appellant was properly convicted under the first, the judgment and sentence under the second count are reversed.

We take this occasion to commend appellant's counsel, appointed by this court, for his vigorous and able presentation of the appeal herein.

TAYLOR, J., concurs.

OXNER, J., concurs in result.

STUKES, C. J., and MOSS, J., concur in part and dissent in part.

STUKES, Chief Justice (dissenting in part).

I would follow the rule indicated by our former decisions and affirm the sentences which were imposed by the trial court. I agree with the disposition of the other questions which are dealt with in the opinion of Mr. Justice Legge. He cites no decision from any jurisdiction which involved resistance of arrest that is contrary to my view, and I have found none.

The evidence justified the verdict of guilt of the common law offenses of (1) resisting arrest and (2) assault and battery of a high and aggravated nature.

Our former decisions, referred to above, are: *State v. Bowen,* 17 S. C. 58, in which, upon an indictment containing two counts, verdict of guilt of (1) resisting an officer and (2) assault and battery, was upheld and affirmed on appeal; *State v. Shaw,* 104 S. C. 359, 89 S. E. 322, in which convic f the defendant of (1) resisting an officer and

(2) assault and battery of a high and aggravated nature was affirmed, and *State v. Robertson,* 191 S. C. 509, 5 S. E. (2d) 285, in which the defendant was indicted upon two counts, (1) pointing a pistol at an officer, and (2) assaulting, obstructing, hindering and opposing the officer in the performance of his duty; the verdict was "guilty of resisting officer of the law, Not guilty of other counts." The last cited case was reversed for new trial because of an omission from the instructions to the jury, without criticism of, or comment upon, the multiple indictment.

I do not think that the court should ignore these decisions because the point now at issue was not discussed in them. It was clearly involved and the acceptance by bench and bar of trial and conviction upon the separate counts of (1) resistance of an officer and (2) assault upon him, is conclusive to me that there has never been any question in this State of the propriety of multiple counts and convictions in such cases.

To my mind the rule is entirely logical. The person of an officer is of dual aspect. As a private citizen he is entitled to freedom from unprovoked assault upon his person; as an officer, no one has a right to resist him when he undertakes to make a lawful arrest. Thus result two crimes when the resistance of arrest is accompanied by an unlawful assault, and no sound ground for merger appears. Resistance of lawful arrest by an officer is a very serious crime; here it was a one-man rebellion against the authority of the State.

The decisions of neighboring North Carolina reflect the same situation as ours. In *State v. Wray,* 217 N. C. 167, 7 S. E. (2d) 468, the defendant was convicted of resisting and obstructing officers *and* of assault with a deadly weapon, under separate criminal statutes. In the earlier case of *State v. Dula,* 100 N. C. 423, 6 S. E. 89, conviction was affirmed upon an indictment which charged (1) assault with deadly weapons and (2) resisting an officer. In the late case of *State v. Mobley,* 240 N. C. 476, 83 S. E. (2d) 100, 106,

the trial in a recorder's court was upon warrants charging (1) public drunkenness, (2) resisting arrest, and (3) simple assault. The verdict was not guilty of public drunkenness, but guilty of (1) resisting arrest and guilty of (2) simple assault. The conviction was reversed upon the conclusion that the arrest was unlawful. Nowhere in the lengthy opinion was it even hinted that the multiple conviction was improper had the arrest been a lawful one. Instead, the opposite view is indicated in the mandate of the court which includes the following: "Hence, the arrest must be treated as illegal. * * * Therefore, the defendant's motion for judgment as of nonsuit, both as to the charge of resisting arrest and assault, should have been allowed, and it is so ordered."

In *State v. Scott,* 123 La. 1085, 49 So. 715, 716, 24 L. R. A., N. S., 199, 17 Ann. Cas. 400, there is a quotation from *United States v. Lowry,* Fed. Cas. No. 15,636, 2 Wash. C. C. 169, the report of which is not available to me, in part as follows: "It is not necessary for him (the officer attempting to arrest the defendant) to proceed to the length of a personal conflict with the defendant; *for that would constitute a distinct offense in the defendant,* even though the officer should succeed." (Emphasis added.)

In most, if not all, of the other States resistance of arrest by an officer is a statutory crime and to constitute the offense the means used must include force, actual or constructive. 67 C. J. S., Obstructing Justice, § (2d) p. 47. In those circumstances there is reason for merger of an assault into the statutory offense of resistance; not so in this jurisdiction where force is not a necessary ingredient of the common law offense of resistance. In the words of *United States v. Lowry, supra,* the force here used by the defendant constituted a distinct offense. In our old case of *State v. Hailey,* 2 Strob. 73, it was held that any obstruction of lawful process, whether it be by active means or by the omission of a legal duty, is an indictable offense.

Moss, J., concurs.